NO. 07-01-0457-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

FEBRUARY 20, 2003
_____

THE ESTATE OF IRIS KIRBY DILLARD, DECEASED

_____

FROM THE 121ST DISTRICT COURT OF YOAKUM COUNTY;

NO. 7146; HON. KELLY G. MOORE, PRESIDING
_____

*Opinion*
_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

Ronald Glen Kirby (Kirby) and Glen David Dillard (Dillard) cross appeal from two orders involving the estate left and trust created by Iris Kirby Dillard upon her death. Via three issues, Kirby contends that the trial court erred in 1) finding that certain accounts passed to Dillard and 2) approving Dillard's accountings of the estate and trust assets. Also through three issues, Dillard challenges the trial court's 1) jurisdiction, 2) determination that certain personal property needed to be placed in the trust and 3) determination that Dillard "did not have the absolute right to withdraw all corpus and income from the trust." We affirm in part, reverse and render in part, and reverse and remand in part.

## *Background*

The appeal involves the interpretation of a will left by Dillard's wife, Iris.  The latter was also the mother of Kirby.  Her will, which was subsequently offered for probate in the Yoakum County Court at Law, named Dillard as her independent executor, and Kirby as the alternate.   Furthermore, she specifically bequeathed to her husband, "in fee simple," the following:

> . . . all my personal property including jewelry, clothing, automobiles, furniture, silver, books, and pictures, but specifically excluding cash and certificates of deposit, or money in any financial institution, to my husband . . . Dillard . . . in fee simple absolute if he survive[d] [her] . . . .

The residue of her estate "whether community or separate, real or personal" was then "give[n]" to Dillard "as trustee, in trust for the benefit of . . . Dillard."  And, with regard to the disposition of the property held in trust, Iris directed that the trustee "shall pay to or apply for the benefit of . . . Dillard during his lifetime all of the net income of the Trust . . . ."  Yet, according to the will,

> [i]f at any time in the discretion of the Trustee my husband should be in need of additional funds for maintenance and support, then the Trustee, in addition to the income payments provided, shall in his discretion pay to or apply for the benefit of . . . Dillard such amounts from the principal of the Trust, up to the whole thereof, as Trustee deems necessary.  In no event shall any trust income or principal be paid during the lifetime of . . . Dillard to anyone other than my husband.

This provision was reiterated later in the will in virtually the same language.  Regarding disposition of its assets upon termination of the trust, Iris directed that:

> [u]nless the Trustee decides to use and does use all the principal of this trust, the trust shall continue in effect until the death of the *beneficiary*, at which time the trust shall be terminated and the principal and any accrued

interest of the trust shall be distributed to the *beneficiary* in fee simple and in equal shares.

(Emphasis added).[1]

Pursuant to the terms of the will, Dillard assumed the position of independent executor of his wife's estate. Sometime thereafter, Dillard moved to close the estate and for discharge from the post of executor. In response, on December 15, 1995, the Yoakum County Court executed an order pursuant to the request. Therein, it discharged Dillard as independent executor and "approved" of "all matters and things by the said Independent Executor on behalf of the estate," and "settled and extinguished" all liability of the executor. Furthermore, the following recitation was included in the order:

> [i]t appeared to the Court that no citation required by §152 of the Texas Probate Code was necessary because the Independent Executor was also the sole distributee of the Estate of Iris Kirby Dillard, deceased . . . .

After the order closing the estate was entered, Kirby sued Dillard, in the 121st District Court, for a declaratory judgment construing not only the will and trust but also the validity of Dillard's actions *viz* the trust. Allegedly, Dillard refused to fund the entity and instead converted the property for his own use. Kirby also sought a judgment declaring that 1) the will created a trust to be funded by the assets of Iris' estate, save those specifically bequeathed to Dillard, 2) Kirby and Iris' grandchildren were the remainder beneficiaries of the trust corpus once the trust ended, 3) the trustee was entitled to invade the trust principal on behalf of Dillard only when necessary to maintain and support Dillard,

---

[1]A question arose at trial as to what was meant when the word "beneficiary" was used for the second time in the paragraph. The trial court apparently construed it to mean Kirby and Iris' three grandchildren for it held that upon Dillard's death the trust "shall terminate and all remaining Trust assets shall be distributed one-half . . . to . . . Kirby, one-sixth . . . to Todd Plott, one-sixth . . . to Dana Crawford, and one-sixth . . . to Shannon Kirby" or to Iris' heirs at law if the remainder beneficiaries die before termination of the trust. Furthermore, no one disputes on appeal said construction of the trust instrument.

3

4) Dillard breached his fiduciary duty of loyalty by placing his "self-interest over and above his obligation to protect the interests" of the trust beneficiaries, 5) Dillard converted the trust assets, 6) Dillard be removed as trustee, 7) Dillard violated §384 of the Texas Probate Code by failing to fund the trust, and 8) Dillard provided an accounting as required by statute.

Upon trial, the court entered its order (signed on September 18, 2000) declaring that the will created a testamentary trust, granted Dillard a life estate in its assets, granted Kirby and Iris' grandchildren (Todd, Dana, and Shannon) a remainder interest in the trust once it terminated, bequeathed to Dillard (free of trust) only Iris' "personal effects" since all other real and personal property "including cash, stocks, bonds, partnership interests, and all funds in financial institutions" passed to the trust, and limited the trustee's ability to encroach upon the trust principal on behalf of Dillard to circumstances when additional funds were needed for his maintenance and support "when taking into account all other resources available to him." The trial court also removed Dillard as trustee, awarded various bank and financial accounts to him, and ordered that Dillard "provide an accounting . . . of all Trust assets . . . ." Approximately one year later, (that is, on October 3, 2001) an order which approved of the amended accounting submitted by Dillard was signed by the trial court. It is from these two orders that the parties appealed.

*Dillard's Appeal*

As previously mentioned, Dillard attacks both orders via three issues. We address each in the order presented.

4

*Issue One - Jurisdiction*

Dillard initially contended that the district court lacked jurisdiction to entertain the suit. This was allegedly so because the Yoakum County Court previously entered a final order (that is, the one it signed on December 15, 1995) stating that Dillard "was the sole distributee" of Iris' estate and the parties were obligated to attack that determination in the Yoakum County Court or by direct appeal from that court's order. We overrule the contention for the following reasons.

First, Dillard does not dispute, on appeal, that the will created a trust. To the extent that Kirby sought a construction of the terms of that trust, to remove the trustee, to determine the liability of the trustee, to ascertain the beneficiaries of the trust, to determine questions involving the administration and distribution of the trust, and to acquire an accounting, those matters were within the original and exclusive jurisdiction of the district court. TEX. PROP. CODE ANN. §115.001(a)(1), (3), (4), (5), (6), (7), (8), & (9) (Vernon Supp. 2003). Moreover, every aspect of the claims asserted by Kirby fell within one or more of those categories.

Second, we acknowledge that the Yoakum County Court executed an order wherein it stated that the "Independent Executor was the sole distributee of" Iris' estate. Dillard suggests that this declaration somehow adjudicated what constituted trust property as well as the interests of the trust beneficiaries in that property. Yet, as previously mentioned, district courts have the original and exclusive jurisdiction to make determinations of fact affecting the administration, distribution, or duration of a trust. TEX. PROP. CODE ANN. § 115.001(a)(6). Whether an instrument created a trust and the extent of that trust's

5

interests (and those of its beneficiaries) in property are clearly fact issues affecting the administration of the trust. Consequently, only a district court had the power to adjudicate them. In other words, the Yoakum County Court lacked jurisdiction to do that which Dillard suggests it did via the December 15th order. And, any attempt by the Yoakum County Court to do that was void for want of jurisdiction. So, to the extent that the December 15th order can be read in the manner Dillard suggests, it was susceptible to attack and negation via suit by Kirby in a court of competent jurisdiction, *i.e.* a district court. *Heard v. State*, 204 S.W.2d 344, 346 (Tex. 1947) (holding that a void judgment may be collaterally attacked).

Third, Dillard's reliance on *Garza v. Rodriguez*, 18 S.W.3d 694 (Tex. App.—San Antonio 2000, no pet.) is misplaced. That case did not involve an attempt by a constitutional county court to construe and enforce a trust instrument or to remove a trustee. Thus, its decision cannot be construed as holding that a determination by such a court of those matters precludes a court of competent jurisdiction, *i.e.* a district court, from considering them. More importantly, in a subsequent opinion which dealt with the same parties and estate, the San Antonio Court of Appeals concluded that because the probate court lacked jurisdiction to resolve issues of title to land, that matter could be reconsidered at a later date by a court of competent jurisdiction. *See Garza v. Rodriguez,* 87 S.W.3d 628, 632 (Tex. App.—San Antonio 2002, pet. filed). In other words, the same court which issued the opinion on which Dillard relies later acknowledged that acts which exceed a court's jurisdiction are subject to attack and reconsideration in a court of competent jurisdiction.

*Issue Two - Scope of Personalty to be Placed in Trust*

Next, Dillard argued that the trial court erred when it declared that the "stocks, bonds, partnership interests and all funds in financial institutions" owned by Iris at the time of her death "pass[ed] to the Trust to be held and administered according to the terms thereof . . . ." We agree and sustain the issue.

It is settled that in construing a will, the court must focus on the testatrix's intent. *San Antonio Area Foundation v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). And, most importantly, that intent must be drawn from the will, not the will from the intent. *Id.* at 640. In other words, the requisite intent must be ascertained from the language found within the four corners of the will, and the court should focus not on what the testatrix intended to write but the meaning of the words actually written. *Id.* at 639. Nevertheless, where words are open to more than one construction, evidence of the testator's situation, the surrounding circumstances and like indicia which enable the court to place itself in the shoes of the testatrix *at the time the document was executed* may be admissible. *Id.* This is so because they may facilitate the determination of intent at that time. But, again, this exception applies only when words are susceptible to more than one construction. *Id*. at 641. If they are not, then the court can look to nothing other than the face of the instrument.

The dispute we now address involved words found in the following provision of the will: ". . . all my personal property including jewelry, clothing, automobiles, furniture, silver, books, and pictures, but specifically excluding cash and certificates of deposit, or money in any financial institution" were to be given to Dillard "in fee simple absolute if he survive[d]

7

[her] . . . ," according to Iris. Kirby asserts that the terms "cash" and "money in any financial institution" encompassed the stocks, bonds, and partnership interests owned by his mother at death. The trial court agreed.

Authority holds that the terms "cash" and "money" have the same meaning when taken in the usual and accepted sense. *Baker & Taylor Drilling Co. v. Blanchard Drilling Co.*, 363 S.W.2d 818, 820 (Tex. Civ. App.—Amarillo 1962, no writ). Furthermore, in its strict sense, "cash" has been construed as referring to coin and paper money. *Id.*; *Stewart v. Selder,* 473 S.W.2d 3, 8 (Tex. 1971). In a less strict sense, others have viewed it as including checks and demand deposits in banks and savings institutions. *Stewart v. Selder*, 473 S.W.2d at 8-9. And, courts have been inclined to afford it a broader interpretation (*i.e.* one that includes securities readily convertible into cash or other kinds of property) when necessary to avoid partial intestacy or "where the provisions of the will and the surrounding circumstances show that the terms were used in that sense by the testator." *Id.* So too has the word "money" been afforded flexible definition depending upon the circumstances involved, and that definition has been said to encompass wealth or property, in general. *Id.*; *see In re Estate of Haldiman*, 653 S.W.2d 337, 340-41 (Tex. App.—San Antonio 1983, no writ) (interpreting the word "money" to include wealth and property to avoid partial intestacy). Yet, despite these various constructions, our Supreme Court has opted for a particular "usual and ordinary meaning of the term[s] when used in a will to refer to a class or type of property owned by the testator," and the meaning adopted is one that construes the terms to encompass coin, paper money, checks and demand deposits in banks and savings institutions. *Id.* at 8-9. So, we start there in

8

interpreting what Iris meant when she incorporated the words "cash" and "money" into her will to describe certain personalty  Dillard was not to receive in fee simple.

In short, unless the circumstances surrounding her execution of the will or some other term of the instrument evinces otherwise, we construe her allusion to "cash, certificates of deposit, and money in financial institutions" to mean coins, paper money, checks and demand deposits alone.  And, we find no such circumstances.  For instance, nothing of record suggests, much less establishes, that at the time Iris signed her will she knew that the terms may mean more than just coin, paper money, checks, and demand deposits.  And, if she did not know of those alternate definitions, it is questionable to suggest that she intended those common, ordinary words to include property outside of their common, ordinary meaning.  Moreover, the attorney who drafted the will and appeared as a witness at trial never testified that he told her of same.  Nor was he even asked about his interpretation of the phrase or what he intended it to encompass when drafting the instrument for his client.

Furthermore, and according to her son, Iris not only knew she owned bonds but also was involved in the development of her community estate.  Yet, she said nothing specifically about bonds when describing the type of personalty she intended to withhold from Dillard.  Given her purported awareness of her knowledge about and involvement in her financial affairs, her omission suggests that she did not actually intend to include them within the definition of "cash" and "money" in financial institutions.

Nor do we see that applying a liberal definition to the words at issue here is necessary to avoid partial intestacy.  Iris' will contained a residuary clause.  So, nothing

would pass via the laws of descent and distribution if we were to assign the words the normal meaning accorded them by the Supreme Court in *Stewart*.

Next, Kirby suggests that his conveying to his mother the property he inherited from his father (Gerald) coupled with Iris' alleged statement that she wanted the property to stay within the family evinced that Iris intended to leave Kirby and his brother, Jerry, all or a substantial portion of her estate, both community and separate. We disagree for the following reason. The statement about keeping the property in the family was made over 17 years before Iris executed the will in question. Nothing of record indicates that she uttered a like comment at any time thereafter or at the time she was drafting and executing the will in question. Also absent from the record is any evidence that Iris agreed to leave her sons any particular interest in her property if they gave her what they inherited from Gerald.

So too did Kirby fail to establish the specific value of the property he relinquished back in the late 1960's. Yet, we can infer from the record that it was much less than the value of the interest he now claims in Iris' estate and the trust. Moreover, no one disputes that the great increase in Iris' net worth (since her first husband died) was due to the entrepreneurial efforts and frugality of Dillard. So, given that the house (being realty) passed to the trust for the benefit of Kirby and his brother's children, what we have before us is the contention that relinquishing a quarter interest in personalty of a substantially less value proves his mother intended to award him an interest in a much greater estate created in large part by Dillard. The latter inference does not reasonably flow from the former fact. More importantly, nothing of record indicates that Iris had these thoughts in mind when

10

incorporating the words "cash," "certificates of deposit," and "money in any financial institution" into her 1987 will, and that is the pertinent time when determining intent.[2] *San Antonio Area Foundation v. Lang, supra.*

Nor do we accept the contention that because Iris sought to do some estate planning when executing the will, she intended to bequeath to the trust much more than her interest in the realty. It may be that $600,000 had to be transferred to the trust to gain various estate tax advantages. Yet, Kirby cites us to no evidence of record illustrating that at the time Iris executed the will, the realty she intended to leave in trust was not worth that sum or that she did not think it worth that sum.

Additionally, had Iris intended to leave her stocks, bonds, and like assets in trust to her children, then one is left to scratch his head over her later actions. As we will illustrate in the discussion below, Iris and Dillard opened an account with Merrill Lynch and executed a written agreement vesting Dillard with rights of survivorship. Placed within that account were stocks and bonds, along with cash and other personalty. Indeed, the type of securities which Kirby alleged were destined for the trust constituted a large segment of that account's value. Given the old proverb that "actions speak louder than words" and Iris' act of vesting Dillard with rights of survivorship in her stocks, bonds and the like, we are hard-pressed to conclude that she intended her children or the trust to receive them upon her death.

---

[2]For similar reasons, we reject the contention that because Iris supplied the "nest egg" to Dillard, she undoubtedly intended to bequeath to her sons most if not all of her estate. Again, the inference does not reasonably flow from the fact. And, while she may have kept Kirby informed about the extent of her property, he cites us to nothing of record suggesting, much less illustrating, that she had the rationales offered by Kirby in mind when executing her will.

11

Simply put, we deign to follow the directives of the Texas Supreme Court. In doing so, we choose to focus on the meaning of the words actually written in the will, *San Antonio Area Foundation v. Lang*, *supra*, and the generally accepted meaning assigned to the words "cash" and "money." And, according to that court, the "usual and ordinary meaning of [those] term[s] when used in a will to refer to a class or type of property owned by the testator" is coin, paper money, checks and demand deposits in banks and savings institutions. *Stewart v. Selder*, 473 S.W.2d at 8-9. Nothing of record supports a reasonable inference that Iris intended otherwise. So, the trial court erred in construing the words in a manner exceeding that definition, and the error was harmful.

*Issue Three - Absolute Right to Withdraw All Principal and Income*

In his final issue, Dillard questioned whether the trial court erred in declaring that his ability (as trustee) to encroach on the principal for his benefit be limited to those events in which he "requires additional funds for his maintenance and support when taking into account all other resources available to him." This allegedly constituted error because he had the unfettered discretion or absolute right to distribute the principal. We overrule the issue.

Resolution of this dispute requires us to again read the will to determine Iris' intent per the rules of construction discussed in the preceding issue. Furthermore, the pertinent trust terms are found in §II(B) and (D) of the will. Through the former, Iris stated that:

> . . . [i]f at any time in the discretion of the Trustee my husband should be in need of additional funds for maintenance and support, then the Trustee, in addition to the income payments provided, shall in his discretion pay to or apply for the benefit of . . . Dillard such amounts from the principal of the Trust, up to the whole thereof, as Trustee deems necessary. In no event shall any trust income or principal be paid during the lifetime of . . . Dillard to anyone other than my husband.

12

In paragraph (D), she wrote:

> . . . If at any time in the discretion of the Trustee, my Husband should be in need of additional funds for his maintenance and support, then the Trustee shall in his discretion pay to or apply for the benefit of my Husband, in addition to the income payments, such amounts from the principal of the Trust, up to the whole thereof, as Trustee deems necessary. In no event shall any income or principal from the Glen David Dillard Trust be paid during my Husband's lifetime to anyone other than my Husband.

No one claims that any term in either provision is ambiguous or otherwise susceptible to different meanings. Nor do we view them as being so. Furthermore, as can be seen from the provisions themselves, Iris specified that the principal could be distributed to Dillard if he "should be in need of additional funds for his *maintenance and support*." (Emphasis added). Given this, we are obligated to determine the meaning of "maintenance and support."

Like words were used by the testatrix when creating a trust in *State v. Rubion*, 308 S.W.2d 4 (Tex. 1958). There the Supreme Court had to decide what interest the beneficiary had when the trust instrument allowed the trustee to distribute assets for the beneficiary's support and maintenance. The court noted that those terms evinced the creation of support trust. *Id.* at 8. And, though a trustee's discretion *viz* distributions from such a trust may be considerable, it was not unbridled. *Id.* at 8-9. Quite the contrary, the trustee must nevertheless act reasonably and in a manner commensurate with the purpose of the trust. *Id.* at 9. This meant that his decision to distribute income or corpus for the beneficiary's support and maintenance could not be exercised at whim. Instead, the trustee was obligated to base his decision after considering indicia such as 1) the size of the trust estate, 2) the beneficiary's age, life expectancy, and condition in life, 3) his present and future needs, 4) the other resources available to him or his individual wealth,

13

and 5) his present and future health, both mental and physical, to name a few. *Id.* at 10-11. With these words and directives in mind, we turn to the trust before us.

Admittedly, Iris used the word "discretion" when expressing the scope of the trustee's authority. Yet, she also incorporated therein the words "support and maintenance" and stated that the corpus could be expended when "necessary" to serve that purpose and when he was in "need of additional funds." "Support and maintenance," "additional funds," and "necessary" hardly connote utter discretion to do that which the trustee may care to at any given moment. Rather, they evince a restriction on the trustee's discretion and authority and denote an intent to permit expenditure when needed for Dillard's support and maintenance. So, like the testatrix in *Rubion*, Iris too created a support trust. Given that, distributions of principal therefrom could be made only in ways commensurate with that purpose. In other words, and contrary to the suggestion of Dillard, the discretion vested in the trustee under the instrument at bar was and is not unbridled or absolute. Instead, he, like the trustee in *Rubion*, must exercise it only after considering the beneficiary's needs, age, condition, separate resources, the size of the trust estate, health, and the like. And, if upon considering those factors, the trustee reasonably concludes that a distribution is warranted, only then can it be made.[3] Finally, the wording used by the trial court at bar to describe the trustee's authority merely reflects the restrictions imposed by Iris and recognized by the Supreme Court long ago.

---

[3]Furthermore, the decision is subject to judicial review. *Rekdahl v. Long*, 407 S.W.2d 339, 344 (Tex. Civ. App.--Eastland), *aff'd,* 417 S.W.2d 387 (1967).

14

*Kirby's Appeal*

As previously mentioned, Kirby also appealed from the two orders issued by the trial court via three issues. We address each in the order presented.

*Issue One - Dillard was Barred from Contending that Certain Accounts*

*Were Anything Other Than Community Property*

Through his first issue, Kirby asserted that Dillard was barred from contending that Merrill Lynch Account No. 51D-11699 and American Express Account No. 0040618086553002 were anything other than community property. This is allegedly so because he listed them or their contents as assets of Iris' estate on an inventory previously filed and approved by the Yoakum County Court sitting in probate. In so listing the accounts or their contents in the inventory, Dillard judicially admitted that they were community property and not property that passed to him via a joint tenancy with right of survivorship agreement, according to Kirby. We overrule the issue.

The contention that Dillard uttered a judicial admission via the inventory and was estopped from contradicting it was not raised or pled below. Estoppel, being an affirmative defense, must be specially pled. TEX. R. CIV. P. 94; *Burkett v. Delaware Drilling Corp.,* 435 S.W.2d 307, 308-309 (Tex. App.—El Paso 1968, writ dism'd. w.o.j.). Because it was not at bar and because a review of the record illustrates that it was not tried by consent, the claim was waived.

*Issue Two - Whether the Merrill Lynch Account Passed to Dillard*

*Via a Joint Tenancy with Right of Survivorship Agreement*

15

In his second issue, Kirby contended that the trial court erred when it found that the Merrill Lynch Account mentioned in the preceding issue passed to Dillard by right of survivorship. This is allegedly so because Dillard failed to prove that the account was subject to such an agreement. We overrule the issue.

In effect, Kirby questioned the legal sufficiency of the evidence to support the trial court's factual conclusion that the account was governed by a particular written agreement signed by Iris and Dillard. In assessing whether the evidence is legally sufficient to support a court's judgment, we apply the test enunciated in *Lewelling v. Lewelling,* 796 S.W.2d 164, 166 (Tex. 1990). And, if upon viewing the evidence in a light most favorable to the judgment we conclude that more than a scintilla exists to support it, then the finding is legally sufficient. *Id.*

Next, §439 of the Texas Probate Code also guides resolution of the dispute before us. It pertains to rights of survivorship and states that

> [s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties against the estate of the decedent if, by written agreement signed by the party who dies, the interest of such deceased party is made to survive to the surviving party or parties . . . A survivorship agreement will not be inferred from the mere fact that the account is a joint account."

TEX. PROB. CODE ANN. §439(a) (Vernon Supp. 2003). In other words, there must be a written agreement signed by the decedent and providing that upon the death of the decedent his interest survives to the other party. *Stauffer v. Henderson*, 801 S.W.2d 858, 863 (Tex. 1990). Additionally, the right cannot be established through either extrinsic evidence or by a rebuttable presumption but only by a written agreement vesting rights in the property to the survivor. *Id*. at 864.

16

At bar, there appears of record an agreement containing the requisite survivorship language. No one disputes this. However, the document expressly references Merrill Lynch Account No. 51D-11699, not Account No. 552-17M38. Thus, the argument involved whether the agreement applied only to the former account and not the latter or to both. To resolve the debate, Dillard presented the testimony of his Merrill Lynch broker. He explained that the accounts were actually one and the same and that they had different numbers simply because the original account was moved from Merrill's Fort Worth office to its Austin office. When an account is moved, he continued, a new number is assigned to it to simply reflect the new office. New agreements were not executed.[4] This is more than a scintilla of evidence supporting the trial court's determination that the written agreement governed Account No. 552-17M38 and the property therein passed to Dillard via rights of survivorship.[5]

*Issue Three - Accounting and Inventory and Appraisement*

Finally, Kirby contended that the trial court erred in approving the accountings it ordered Dillard to file. This was allegedly so because the accountings provided by him do not include a "complete list of receipts, disbursements, and other transactions regarding the trust property . . . and fail to show which property is being administered." We agree and sustain the point.

---

[4]At least, the Merrill Lynch broker testified that new agreements were not executed. Moreover, Kirby failed to proffer any new agreements to rebut the broker's testimony. This seems most telling. That one would open an account and place more than a million dollars worth of property therein without executing an agreement to determine the rights and liabilities of the depositor and depositee is incredible. To adopt Kirby's position without evidence of a new agreement would be to adopt the incredible. Strange days indeed, when we do that.

[5]Incidentally, by offering the testimony of the broker, Dillard was not tendering extrinsic evidence to evince an intent on behalf of the account owners to create rights of survivorship. Rather, he was simply illustrating what agreement applied to what account. While *Stauffer* prohibits the former, it does not bar the latter.

17

At bar, the trial court ordered Dillard to "provide an accounting . . . of all Trust assets" commencing with the assets as of the date Iris died and ending "as of the last day of the month preceding the date of the accounting." So too did it direct him to comply with §113.152 of the Texas Trust Code. Next, the latter states that the submission should contain 1) an itemization of all trust property that has come to the trustee's knowledge or trustee's possession and that has not been previously listed or inventoried as property of the trust, 2) a complete account of receipts, disbursements, and other transactions regarding the trust property for the period covered by the account, including their source and nature, with receipts of principal and income shown separately, 3) a list of all property being administered, with an adequate description of each asset, 4) a statement of the cash balance on hand and the name and location of the depository where the balance is kept, and 5) a statement of all known liabilities owed by the trust. TEX. PROP. CODE §113.152 (Vernon 2001). Neither the original nor amended accounting proffered by Dillard complies with these directives. For instance, there existed at the time of Iris' death an account with the First National Bank, numbered 140-2801, and containing a sum of $45,034. To the extent that the $45,034 sum consisted of money or cash, Iris' interest in same passed to the trust. Thus, Dillard was obligated to account for those funds. He did not. Instead, he stated in the accounting that the trial court found them to be his via rights of survivorship. The order of the court declaring what accounts so passed to him said nothing of First National Bank account number 140-2801, however.

Furthermore, the trial court's order alluded to an accounting of trust property only. Yet, given our decision that the phrase "cash, certificates of deposit, and money in any financial institution" included only coin, checks, paper money, and demand deposits held by financial institutions, the accountings proffered by Dillard covered more than simply trust property. Thus, they are inaccurate.

Accordingly, we reverse that portion of the trial court's September 18, 2000 order decreeing that Iris' "stocks, bonds, and partnership interests" passed to the trust, render judgment declaring that the phrase "cash, certificates of deposit, and money in any financial institution" means only coins, paper money, checks, certificates of deposit, and demand deposits in any financial institution, and affirm the remainder of that order as modified. Next, we reverse that portion of the October 3, 2001 order approving of the original and amended accountings of Dillard, remand the issue to the trial court for further proceedings, and affirm the remainder of the order.

Brian Quinn
Justice