NO. 07-04-0513-CR


NO. 07-04-0514-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MARCH 17, 2005



______________________________




GUSTAVO RAMIREZ, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 242ND DISTRICT COURT OF HALE COUNTY;



NO. B15475-0404 & 15478-0404; HONORABLE ED SELF, JUDGE



_______________________________



Before QUINN and REAVIS, JJ. and BOYD, S.J. (1)

MEMORANDUM OPINION


 Pursuant to pleas of guilty, appellant Gustavo Ramirez was convicted of aggravated
sexual assault in cause number B15475-0404 and sentenced to 12 years confinement and
a $2,000 fine and convicted of burglary in cause number B15478-0404 and sentenced to
two years confinement and a $1,000 fine. 

 The clerk's records in these appeals reflect that the trial court entered certifications
of defendant's right to appeal in which it certified these cases were plea bargain cases with
no right of appeal. By letter dated February 16, 2005, this Court notified appellant that the
certifications indicate no right of appeal and requested a response by March 7, 2005, noting
that failure to file amended certifications showing a right of appeal or failure to provide other
grounds for continuing the appeals would result in dismissal. See Tex. R. App. 25.2(a)(2)
& (d); see also Stowe v. State, 124 S.W.3d 228, 232 (Tex.App.-El Paso 2003, no pet.). 
Appellant did not respond and no amended certifications indicating a right to appeal have
been filed in a supplemental record. Thus, we dismiss these appeals.

 Accordingly, these appeals are dismissed. (2)

 Don H. Reavis

 Justice



Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.
2. The certification filed in cause number 07-04-0512-CR, an appeal from a revocation
order, indicates a right of appeal and was abated to the trial court for further proceedings.



g 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-0135-CV

                                                             

                                                   IN
THE COURT OF APPEALS

 

                                       FOR THE
SEVENTH DISTRICT OF TEXAS

 

                                                                 AT
AMARILLO

 

                                                                     PANEL
D

 

                                                                APRIL  27, 2010

 

                                            ______________________________

 

                                        Estate of JERRY DON CATLIN, Deceased

                                            ______________________________

 

                           FROM THE 64TH DISTRICT
COURT OF HALE COUNTY;

 

                    NO. A35890-0802; HON. ROBERT
W. KINKAID, JR., PRESIDING

 

                                               ____________________________________

 

Opinion

____________________________________

 

Before QUINN, C.J., and
CAMPBELL and PIRTLE, JJ.

            This appeal concerns the interpretation of a lost will
executed by Jerry Don Catlin (Catlin Sr.) and which created a testamentary
trust.   A copy of the document was probated
in its stead.  The testators son, Jerry
Don Catlin, II, (Junior) challenged the effort of Douglas Glenn Barnes (his
stepbrother) to probate the document.  
Junior lost the challenge and now appeals.  His two issues involve the sufficiency of the
evidence underlying the trial courts conclusion that the original will was
lost and the accuracy of the trial courts interpretation of the document.  For reasons which will be discussed below, we
affirm the judgment.

 

 

            Issue One  Lost Will and
Probate of a Copy

            Junior initially asserts that there was insufficient
evidence to establish a cause of the non-production of the Will.  This was allegedly so because the proponent
of the will . . . [Barnes] had the burden of proof and the presumption that the
will was revoked to overcome.  And, saying
we looked and we can not find it was not enough, in his view.  Thus, Barnes supposedly failed to satisfy the
statutory requirements authorizing the probate of a copy.  We overrule the issue.

             According to §85 of the Texas Probate Code, 

 A written will which cannot be produced in
court shall be proved in the same manner as provided in the preceding Section
for an attested written will or an holographic will, as the case may be, and
the same amount and character of testimony shall be required to prove such will
as is required to prove a written will produced in court;  but, in addition thereto, the cause of its
non-production must be proved, and such cause must be sufficient to satisfy the
court that it cannot by any reasonable diligence be produced, and the
contents of such will must be substantially proved by the testimony of a
credible witness who has read the will, has heard the will read, or can
identify a copy of the will.

 

Tex.
Prob. Code Ann. §85 (Vernon Supp. 2009)
(emphasis added).  This provision
establishes a method by which a copy of a will may be probated when the
original cannot be found.  The elements
of the statute in play here are those requiring the wills proponent to prove
the cause of its non-production and that it could not be produced through
the use of any reasonable diligence.   

            The appellate
record before us discloses that the will purporting
to be the final testament of Catlin Sr. was represented via a copy marked and
admitted as Exhibit 1.  Furthermore, the
attorney who drafted it attested that Exhibit 1 was an unsigned duplicate of
the actual document that Catlin Sr. executed. 
Two witnesses present at its execution also identified the exhibit as a
copy of Catlin Sr.s last will.   One further
stated that had Exhibit 1 merely been a draft of the final will, as opposed to
an actual copy, it would have been marked draft.  However, because it was marked copy it was
a duplicate of the actual, executed will.

            Diane King, Catlin
Sr.s stepdaughter, also testified that she had spoken to her stepfather about
his will.  He informed her that he wanted
to make some changes to it and was acquiring information to do so.  However, those changes were not made before
his death.  She further stated that she
searched for his will after he died.  Her
search encompassed both his home and his place of business, Oswald
Printing.  Though the original was never
found, a copy represented by Exhibit 1 was. 
The latter was discovered in Catlin Sr.s briefcase along with documents
relating to the estates of his mother and his pre-deceased wife, Doris.  She further attested that her search uncovered
no other item purporting to be Catlin Sr.s last will.

            Barnes also
testified about the effort undertaken to uncover the document.  Those looking for it went through his office
at the house and at Oswald Printing, he said.  So too did they go to every bank in town,
basically, or well the banks that [Glen] knew that [Catlin Sr.] had any kind of
a business relationship with.  At those
banks, they checked for safety deposit boxes. 
A search of the files of the attorney who acquired the practice of the
lawyer who drafted the will was also undertaken, but it met with little success.


            In In re Estate of Capps, 154 S.W.3d 242
(Tex. App.Texarkana 2005, no pet.),
the evidence illustrated that the testator executed her will, kept the
original, and provided a copy of it to someone for safekeeping with church
records.  The copy was placed in a locked
file cabinet.  After Capps died, a search
was undertaken for the original.  Its
scope encompassed her house and a metal box in which she normally retained
important documents.  Yet, as here, the
original was never found.  When asked if
such evidence satisfied the requirements of §85 of the Probate Code, the panel
in Capps said yes.  Id. at 244-45.   No
less of a search was conducted here.  Not
only did it include Catlin Sr.s house but also his business and the banks with
which he maintained a business relationship. 
Given this and Capps, we hold that
the record before us contains both legally and factually sufficient evidence supporting
the trial courts findings that 1) Catlin Sr. did not revoke the February 1993
will submitted for probate, 2) Exhibit 1 was a true and correct copy of the
original February 1993 will, and 3) [t]he Applicants have provided good and
sufficient evidence as to the cause of the original Wills non-production and
this cause is sufficient to satisfy the Court that the original Will cannot, by
any reasonable diligence, be produced. 
It was not necessary for Barnes to also show how it was lost such as through
the eating habits of a neighbors goat, the occurrence of a Kansas tornado, the
devastation of a flash flood, or the like.  


            Issue Two Termination of the Trust

            Junior next
argues, via issue two, that the trust which the will purported to create failed
or terminated because Doris predeceased her husband.  Thus, the property designated to comprise its
corpus could not pass to the trusts remaindermen,
who happened to be Juniors stepsiblings. 
We overrule the issue.

It is settled that in construing a will, we
focus on the testators intent.  San Antonio Area Foundation v. Lang, 35 S.W.3d 636, 639
(Tex. 2000); In re Dillard, 98 S.W.3d 386, 391-92 (Tex. App. Amarillo
2003, pet. denied).  Furthermore,
that intent is drawn from the will, not the will from the intent.  San Antonio Area Foundation v. Lang, 35 S.W.3d at 640; In re Dillard, 98 S.W.3d at 391.  In other words, the testators intent must be
garnered from the actual language within the four corners of the document.  San Antonio Area Foundation v. Lang, 35 S.W.3d at 639; In re Dillard, 98 S.W.3d at 391.  Nevertheless, if those words are open to more
than one reasonable construction, evidence of the testators situation, the
circumstances surrounding or influencing the wills execution, and like indicia
which enable the court to place itself in his shoes at the time the document
was executed may be admissible.  San
Antonio Area Foundation v. Lang, 35 S.W.3d at 639.  This is so because they may facilitate the
determination of intent at that time. 
But, again, this exception applies only when words are susceptible to
more than one construction.  San
Antonio Area Foundation v. Lang, 35 S.W.3d at 641; In
re Dillard, 98 S.W.3d at 391-92. 
If they are not, then the court can look to nothing other than the face
of the instrument.  In re Dillard,
98 S.W.3d at 391-92.

            So too must we remember that our
task is to harmonize potentially conflicting terms in a way that effectuates all
aspects of the document.  Hutton v.
Methodist Home, 615 S.W.2d 289, 292 (Tex. Civ. App.Fort Worth 1981, writ
ref'd n.r.e.).  No provision should be
rendered meaningless, if at all possible. 
Myrick v. Moody, 802 S.W.2d 735, 738 (Tex. App.Houston [14th
Dist.] 1990, writ denied).   Nor should
we arrive at a construction that results in partial intestacy, if possible, for
such an outcome is disfavored.  Shriners Hosp. Etc. v. Stahl, 610 S.W.2d
147, 151-52 (Tex. 1980); Atkinson v. Kettler,
372 S.W.2d 704, 710 (Tex. Civ. App.Dallas), affd, 383 S.W.2d 557 (Tex. 1964).  With these precepts in mind, we turn to the
writing before us.

            Via subpart 2.1 of the document, we
see that the testator initially bequeath[ed]
to [his] spouse [Doris] all of [his] interest in the household and yard and
garden furniture, personalty used for recreational
purposes, automobiles, clothes, jewelry, and personal effects used or worn by
him.  However, if Doris were to die
before him, the aforementioned property was to become a part of that property
devised and bequeathed by subpart 2.3 of this section [i.e. Section II] of [his] Will. 
In subpart 2.2, Catlin Sr. left to his descendants living at the time
of [his] death a sum equal to one-tenth of the rest, residue, and remainder
of [his] property estate.  If no such
descendants were alive, however, the one-tenth was to become a part of the
rest, residue and remainder of [his] property. . . devised
and bequeath[ed] by subpart 2.3 as well.   Incidentally, Junior was the only person who
fell within the wills definition of descendant.   

            Through subpart 2.3, Catlin Sr.
devised all the rest, residue, and remainder of [his] property and estate,
real and personal . . . to the Trustee or Trustees hereinafter named in Section
III . . . to be held, administered and distributed as provided in such
section.  As for Section III of the will,
the testator used it to create the Jerry Don Catlin Trust.  Therein, he appointed Barnes trustee and directed
that the income from the trust . . . be used . . . to pay the expenses  . . . incident to administering and
operating the trust and to the preservation of the trust corpus.  All of the remaining income of the trust
was then to be distributed, in equal shares, to [his] spouse [Doris] and Jimmy
Wayne Barnes, Diane Marie King, and Douglas Glen Barnes at such intervals as
shall be deemed reasonable by my Trustee 
. . . .  The trustee was also
granted the authority to invade the trust corpus if the income proved insufficient
to provide for the health, education, support and maintenance . . . of the
beneficiaries.  Catlin Sr. then directed
the trust to terminate upon the death of [his] spouse and that upon its
termination, all the trust corpus shall belong and be delivered to Jimmy Wayne
Barnes, Diane Marie King, and Douglas Glen Barnes, in equal shares or to the
respective children of any of those three who had died.  From these various provisions we reach the following
conclusions.

            First, the will contained no
residual clause other than that vesting the trust with the remaining 9/10ths of
the testators property interests.  We
mention this because Juniors interpretation of the will and circumstances of
the case would result in a partial intestacy. 
That is, if the provisions relating to the creation of a trust are
somehow nullified because Doris predeceased her husband, then no residual
clause exists to direct how the remaining 9/10ths of the estate should be distributed.  Consequently, the rules of intestate
succession would come into play, which is a result disfavored by our
jurisprudence.  Shriners Hosp. v. Stahl, supra.
 And, application of those rules would
effectively pass the estate to Junior as Catlin Sr.s only child.  Tex.
Prob. Code Ann. §38(a)(1) (Vernon 2003). 

            Next, and irrespective of the legal
mechanism by which his estate was to pass, Catlin Sr. specified, and therefore
intended, that Junior receive no more than 1/10th of his estate
after specific bequests to Doris were disbursed.  Again, the testators descendants (i.e. Junior) living at the time of
[his] death a sum equal to one-tenth of the rest, residue, and remainder of
[his] property estate.  Nothing was left
them or Junior elsewhere in the document. 
More importantly, any interpretation of the will that resulted in a
partial intestacy would effectively contradict the testators intent for they (i.e. Junior) would receive more than the
1/10th limitation specified by the instrument. 


            We next conclude that Doris
interest in both her husbands estate and the trust was contingent upon her
surviving him.  Again, the specific
bequests given her were to go to the trust per subpart 2.3 of the will if she predeceased
him.  Furthermore, her enjoyment of the
trust income and corpus ended when she died since at that point the trust
terminated and the remaining property was to be distributed to her children, James,
Jimmy, and Diane.  

            So too do we see that creation of
the trust was not dependent upon Doris surviving her husband.  To conclude otherwise would be to nullify subpart
2.1 of the will.  Through that provision,
Doris was to receive various personal items of her husband so long as she
outlived him.  Yet, if she died before
him then all of the foregoing items [were to] become a part of [the] property
devised and bequeathed by subpart 2.3, the latter being the clause placing the
property in trust.  Given that we must
interpret the will in a manner that gives effect to each provision, Hutton
v. Methodist Home, 615 S.W.2d at 292, we can only conclude that by
requiring property to be placed in trust even if Doris died before Catlin Sr., the
latter intended to create a trust irrespective of whether she survived him. 

            Additionally, Junior cites us to no
authority prohibiting the creation of a trust followed by its immediate
termination.  He does though turn to §58a(d) of the Texas Probate Code and uses it to support his
contention that because Doris died before her husband, the trust never came
into creation.  That section, which
concerns bequests left to a trust, is the Texas version of the Uniform Testamentary
Additions to Trusts Act.  Tex. Prob. Code Ann. § 58a(a) (Vernon 2003); In
re Estate of Canales, 837 S.W.2d 662, 667 (Tex. App.San Antonio 1992, no writ).  According to subsection (d) of that statute,
[u]nless the testator's will provides otherwise, a revocation or
termination of the trust before the
testator's death causes the devise or bequest to lapse.  Id.
at §58a(d) (emphasis added).  For a trust to have terminated before the testators death,
it must have been in existence prior thereto; indeed, an event cannot end if it
never began in the first place.  Yet, the
Jerry Don Catlin Trust was created through Catlin Sr.s will, and no one
suggests otherwise.  Moreover, the terms
of that will did not take effect until he died. 
Meyer v. Shelley, 34
S.W.3d 619, 623 (Tex. App.Amarillo 2000, no pet.), citing Shriners Hosp. v. Stahl, 610 S.W.2d 147,
150 (Tex. 1981) (holding that a will speaks at
the time of the testators death).  At that point the trust arose, and it
instantaneously acquired title to the property bequeathed to it by Catlin Sr.  See Tex. Prob. Code Ann. §37 (Vernon 2003)
(stating that when a person dies testate, title to property immediately vests
in the devisees or legatees); accord, In
re Hite, 700 S.W.2d 713, 717 (Tex. App.Corpus Christi 1985, writ refd
n.r.e.) (stating that there
is no shorter interval of time than when the testator dies and his estate
passes to his devisees).  So, the circumstances before us are not those governed by
§58a(d).

            Young folk of the
1970s sang about how a long strange trip its been.[1]  That seems to capture the essence of our
discourse, that is, a long trip encompassing odd circumstances.  Nonetheless, engaging in the journey serves
to illustrate how the words of the will truly manifest the intent of Catlin Sr.
and why our disposition of this appeal abides by that intent.  In rejecting Juniors assertion, we avoid the
chance of intestacy, apply the words utilized by the testator within the four
corners of the will, follow legal principles established as road markers, and,
by vesting his stepchildren with the remaining 9/10ths of his estate, arrive at
the destination his father selected. 

            Having overruled
each issue, we affirm the judgment of the trial court.

 

                                                                                    Brian
Quinn

                                                                                    Chief
Justice  

    











[1]Grateful Dead, Truckin.