KEISLING V. LANDRUM

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-008-CV

FRANKYE KEISLING APPELLANT

V.

LYNN LANDRUM, AS TRUSTEE OF THE APPELLEES

ALFRED FATE KEISLING TRUST, TOM ALFRED

KEISLING, LESLIE DIANE KEISLING PERKINS, AND

MICHAEL KEVIN KEISLING

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Frankye Keisling, individually and as primary beneficiary under the Alfred Fate Keisling Trust, appeals from a declaratory judgment that prevents her from receiving trust distributions until her “other financial resources” are depleted save one home and one vehicle.  In three issues, appellant argues that the trial court erred (1) in its construction of the terms of the trust, (2) by failing to find that appellant was entitled to distributions from the trust since Fate Keisling’s death, and (3) by not awarding attorney’s fees to appellant.  We reverse and remand.

II.  Background Facts

Fate and appellant married on April 26, 1997, in Ruidoso, New Mexico, and stayed married until Fate’s death on July 25, 2000.  Fate and appellant had both been in prior, long-term marriages.  Before marrying Fate, appellant worked at Huff’s Furniture Galleries for thirty-two years, starting out as a secretary and eventually becoming a licensed interior designer.  After marrying Fate, appellant quit working because Fate wanted her to travel with him.  Appellant was earning a salary of approximately $70,000 a year when she stopped working. 

Prior to marrying, Fate and appellant entered into an Agreement in Contemplation of Marriage (“pre-nup”).  At the time of their marriage, Fate had significantly more assets than appellant; Fate’s assets were in excess of $1.3 million while appellant’s were approximately $300,000.  Although Fate and appellant signed a pre-nup, Fate agreed to provide for the couple’s standard of living and to pay appellant’s mortgage, property taxes, and for repairs and maintenance for her home in Wichita Falls, Texas.  Fate also granted appellant a life estate in his Ruidoso cabin.

During their three-year marriage, Fate and appellant enjoyed a high standard of living.  They maintained a home in Wichita Falls, a home in Lubbock, and a cabin in Ruidoso.  They had five vehicles, went on cruises to Alaska and Panama, and traveled throughout Texas and to Washington, D.C.  Before he died, Fate also planned a trip for them to Carmel, California.

Fate died on July 25, 2000, leaving a testamentary trust for the benefit of appellant and his children from his earlier marriage.  Except for personal effects and nontestamentary transfers, Fate’s entire estate passed to the trust, including all of his interests in real property. 

Lynn Landrum was good friends with Fate and his first wife, Jeanie Keisling, who died a year before Fate married appellant.  Lynn served as the executor of Fate’s estate and as the trustee of Fate’s trust.  After Fate died, Lynn made no trust distributions to appellant, reasoning that appellant was not entitled to distributions until she exhausted all of her “other financial resources,” which included everything save one home and one vehicle.

Having received no trust income or principal distributions, appellant filed suit on May 31, 2002, under the Texas Declaratory Judgment Act and the Texas Trust Code for the court to declare the terms of the trust and the distributions to be made to her.  Appellant also joined Fate’s children (“appellees”) as interested parties.  After hearing evidence from both parties, the trial court determined that the trust language was ambiguous and that Fate had not intended for appellant to receive distributions from the trust until she had exhausted all of her “other financial resources,” meaning income and assets, except for one home and one vehicle.

III.  Appellant’s Issues on Appeal

Appellant’s first issue is dispositive, as this case’s outcome depends on whether the trial court’s interpretation of the phrase “other financial resources” in the trust is correct.  Appellant contends that the trial court’s interpretation is erroneous.  The relevant portion of Fate’s trust is as follows:

4.  The primary purpose of “THE ALFRED FATE KEISLING TRUST” shall be to provide for the support, maintenance, and health of my wife 
in the standard of living to which she is accustomed at my death
.  
If my wife’s own income and other financial resources from sources other than from this trust are not sufficient to so maintain her in such standard of living
, the Trustee 
shall 
distribute, from time to time, as much of the current trust net income, or accumulated trust net income, as shall be necessary to so maintain her.  If my wife’s own income and other financial resources, together with distributions of current and accumulated trust net income from this trust, are not sufficient to maintain her in such standard of living, then the Trustee 
shall 
distribute as much of the trust corpus as shall be necessary to so maintain her.  After my wife has been provided for in the manner described above, and if in the Trustee’s judgment, it will not endanger my wife’s present or reasonably foreseeable future support, the Trustee may distribute to my descendants, from time to time, such amounts of the current or accumulated trust net income and as much of the trust corpus, as shall be necessary for their respective support, maintenance, health, and education . . . . [Emphasis added.]

At trial, no party disputed the fact that Fate and appellant were accustomed to a high standard of living.  Additionally, no party disputed that Fate intended the trust to take his place supporting appellant’s high standard of living after he died.  The dispute arises in Fate’s intended meaning of “other financial resources” in the trust instrument.  Appellant asserts that Fate intended “other financial resources” to mean financial 
income
 and that Lynn should have distributed trust income payments to her as soon as her own income could not support her standard of living.  Conversely, appellees argue that Fate intended “other financial resources” to mean assets and income and that appellant must first exhaust all of her assets except for one house and one vehicle before Lynn can distribute trust income payments.

A.  Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury’s answers to jury questions.  
Anderson v. City of Seven Points
, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court’s findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury’s answer.
(footnote: 1)  
Ortiz v. Jones,
 917 S.W.2d 770, 772 (Tex. 1996); 
Catalina v. Blasdel,
 881 S.W.2d 295, 297 (Tex. 1994).  A court of appeals cannot make original findings of fact, it can only “unfind” facts.  
Tex. Nat’l Bank v. Karnes,
 717 S.W.2d 901, 903 (Tex. 1986); 
Zeptner v. Zeptner
, 111 S.W.3d 727, 734 (Tex. App.—Fort Worth 2003, no pet.) (op. on reh’g).

Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts.  
Citizens Nat’l Bank v. City of Rhome
, 201 S.W.3d 254, 256 (Tex. App.—Fort Worth 2006, no pet.); 
Dominey v. Unknown Heirs and Legal Representatives of Lokomski
, 172 S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.).

B.  Applicable Law

The construction of a will or trust instrument is a question of law for the trial court.  
Eckels v. Davis
, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied).  Courts construe trusts to determine the intent of the maker.  
Id. 
 The intent of the maker must be ascertained from the language used within the four corners of the instrument.  
Id. 
 (citing 
Shriner’s Hosp. for Crippled Children of Tex. v. Stahl
, 610 S.W.2d 147, 151 (Tex. 1980)).  All terms must be harmonized to properly give effect to all parts, and if possible, the court should construe the instrument to give effect to all provisions so that no provision is rendered meaningless.  
Id. 
 If the language used by the maker of a trust is unambiguous, it is unnecessary to construe the instrument because it speaks for itself.  
Id.
; 
Hurley v. Moody Nat’l Bank of Galveston
, 98 S.W.3d 307, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.); 
see Moody v. Pitts
, 708 S.W.2d 930, 935 (Tex. App.—Corpus Christi 1986, no writ).  The trial court’s conclusion of law that the trust terms were unclear is reviewed de novo as a legal question.  
Turner v. Mullins
, 162 S.W.3d 356, 364 (Tex. App.—Fort Worth 2005, no pet.). 

C.  Analysis

1.  Ambiguity of the Trust

At trial, appellant introduced evidence that her regular monthly revenue was $1,137.75.
(footnote: 2)  Although the trial court did not determine appellant’s standard of living at the time of Fate’s death, neither party disputed that appellant’s standard of living was high and included food, gas, gifts to church, gifts to children, utilities, a security system, maid service, yard maintenance, taxes, insurance, cruises to Panama and Alaska, dental and medical care, shopping, five vehicles, and costs to support multiple homes.  Appellant argued that, based on these expenses, her standard of living at Fate’s death was at least $5,600 per month.  According to appellant, because Fate had paid for these expenses prior to his death, the trust should step in to cover any monthly costs that her income could not cover; these uncovered costs amounted to approximately $4,462.25 per month starting the first month after Fate died. 

Appellant’s expert witness, Charles King, an attorney specializing in wills and trusts, asserted at trial that the terms income and “other financial resources” were unambiguous, and that Fate never intended for appellant to exhaust all of her bank accounts, IRAs, and other assets save one house and one vehicle before receiving distributions.  King further testified that the term “income” as used in the trust means compensation for personal services and work while “financial resources” means the cash flow from other assets such as Social Security, pension payments, annuity contracts, and similar items.  As authority for his opinion, King cited section 50, comment e(2) of the Restatement of Trusts.  Under this section, a beneficiary’s “other resources” normally include “income and other periodic receipts, such as pension or other annuity payments and court-ordered support payments.”  
Restatement (Third) of Trusts
 § 50 cmt. e(2) (2003).    

John League, a trust officer and expert witness for appellees, testified that  according to the terms of the trust, appellant must first exhaust all of her assets, including the four extra vehicles, cash, bank accounts, stocks, bonds, and other assets excluding one house and one vehicle before she can receive distributions.  John Freels, Fate’s attorney who drafted the trust, agreed with League and deposed that “if [appellant] has four cars and only needs one car, then she could liquidate the other three excess cars and use that for her support, maintenance and needs.”  Freels and League both reasoned that one house and one car are exempt from appellant’s “other financial resources” because they provide basic maintenance support.  At trial, however, neither expert elaborated on exactly how the trust instrument directed the trustee to limit appellant’s maintenance support in this manner. 

Appellant argues that appellees’ interpretation of the will leaves her with two illogical choices:  either stretch every dollar as far as possible or sell off all of her assets.  However, according to appellant, there is no evidence in the trust instrument that Fate intended for her to exhaust all of her assets in this manner.  We agree.  

Both parties’ experts testified that the primary purpose of the trust was to provide for appellant—the trust’s primary beneficiary—as Fate had done during their marriage.  Further, the trust language unambiguously states Fate’s intent to sustain appellant’s high standard of living and directs Lynn to use the trust income and even invade the trust corpus if appellant’s income does not support her lifestyle.
(footnote: 3)  

While Fate was alive, appellant enjoyed the benefits and luxuries of cruises and vacations, multiple homes, and multiple vehicles.  There is no evidence in the wording of the instrument that Fate intended the trust to be a parachute to protect appellant from poverty after she had exhausted all of her own assets.  On the contrary, the purpose of the trust was to step in and pay for appellant’s high standard of living upon Fate’s death.  This high standard, which was established before Fate died, included use of and access to not just one vehicle, but to several.  Appellant’s standard of living also included use of both of the couple’s homes plus use and access to her own home in Oklahoma.  It would be nonsensical to require appellant to sell all of her vehicles and other assets save one home and one vehicle just so the trust could “step in” and provide her with funds to purchase new assets and vehicles to replace them.  Further, if we construe “other financial resources” to mean all assets, nothing in the instrument shows an intent for appellant to keep one home and one vehicle; in that situation, appellant would have to sell everything she owns before receiving distributions, which is also nonsensical.

If the language of a trust instrument is unambiguous and expresses the intention of the maker, it is unnecessary to construe the instrument because it speaks for itself.  
Corpus Christi Nat’l Bank v. Gerdes
, 551 S.W.2d 521, 523 (Tex. Civ. App. 1977).  In such a situation, a trustee’s powers are conferred by the instrument and neither the trustee nor the courts can add to or take away from such powers, but must permit it to stand as written and give to it only such construction as the trustor intended.  
Id
.  Here, Fate’s trust is unambiguous in its intent to maintain appellant in the standard of living to which she was accustomed at his death.  By requiring appellant to use her own income and “other financial resources,” Fate did not intend for appellant to become impoverished before the trust stepped in to again elevate her to a high standard of living.  On the contrary, Fate designed the trust to provide appellant with a comfortable lifestyle, which included multiple vehicles, at least one vacation each year, and other reasonable luxuries.  

During oral arguments and throughout their brief, appellees asserted that Fate and appellant enjoyed an inflated standard of living that was really just a “fantasy.”  Appellees base this argument on the fact that Fate was spending money from his deceased first wife’s trust that he was not entitled to.  Therefore, according to appellees, the trial court should establish a lower standard of living for appellant than she was accustomed to during marriage.  We find this argument unpersuasive.  First, when Fate died, Lynn used monies from Fate’s estate to pay back these misused funds.  More importantly, it is irrelevant that Fate and appellant enjoyed an inflated standard of living; what is relevant is the instrument language.     

Because the trust language unambiguously shows Fate’s intent to provide for appellant without her having to exhaust any assets, we hold that “other financial resources” as used in Fate’s will means “income and other periodic receipts, such as pension or other annuity payments and court-ordered support payments.”  
See
 
Restatement (Third) of Trusts
 § 50 cmt. e(2).  Accordingly, we hold that the trial court’s conclusions of law numbers 5, 6, 9, and 10 are incorrect; thus, the findings of fact numbers 8-11 (which are more properly characterized as legal conclusions as they relate to the ambiguity of the trust language) and 14-16 (which deal with the parol evidence supporting Fate’s intent) were unnecessary, and we “unfind” them.  

2.  Balancing Appellant’s Current Support and Maintenance Needs with the Need to Preserve the Trust for Appellant’s Future Support and Maintenance

Although Lynn, the trustee, has a responsibility to distribute the trust’s income and principal to appellant to maintain her in the lifestyle to which she is accustomed, we recognize that he has a competing responsibility to manage the trust prudently and responsibly to preserve it for her 
future 
support and maintenance.  
See 
Tex. Prop. Code Ann.
 § 113.006 (Vernon Supp. 2006) (stating that a trust may manage the trust property on the conditions and for the lengths of time as the trustee deems proper); 
Brault v. Bigham
, 493 S.W.2d 576, 579 (Tex. Civ. App.—Waco 1973, writ ref’d n.r.e.) (holding that safety of the trust fund is the first care of the law, and on this depends every rule which has been made for the conduct of trustees).  Here, the trust instrument does not state that Lynn must give into appellant’s every support and maintenance whim; it simply notes that income and principal from the trust shall be distributed to appellant to support and maintain her if appellant’s income does not suffice.  Given this, we are obligated to determine the meaning of “maintenance and support.”  
See Estate of Dillard
, 98 S.W.3d 386, 395 (Tex. App.—Amarillo 2003, pet. denied). 

Like words were used by the testatrix when creating a trust in 
State v. Rubion
, 158 Tex. 43, 308 S.W.2d 4 (1957).  
See Estate of Dillard
, 98 S.W.3d at 395 (analyzing 
Rubion
).  There, the court had to decide what interest the beneficiary had when the trust instrument allowed the trustee to distribute assets for the beneficiary’s support and maintenance. 
 Rubion
, 308 S.W.2d at 8.  The court noted that those terms evinced the creation of a support trust.  
Id
.  And, though a trustee’s discretion regarding distributions from such a trust may be considerable, it was not unbridled.  
Id. 
at 8-9.  Quite the contrary, the trustee must nevertheless act reasonably and in a manner commensurate with the purpose of the trust.  
Id. 
at 9.  This meant that his decision to distribute income or corpus for the beneficiary’s support and maintenance could not be exercised at a whim.  Instead, the trustee was obligated to base his decision after considering indicia such as (1) the size of the trust estate, (2) the beneficiary’s age, life expectancy, and condition of life, (3) his present and future needs, (4) the other resources available to him or his individual wealth, and (5) his present and future health, both mental and physical, to name a few.  
Id. 
at 10-11.  With these words and directives, we turn to the trust before us. 

Admittedly, Fate directed Lynn to distribute funds to beneficiaries other than appellant if, in Lynn’s judgment, these distributions would not endanger appellant’s future support and maintenance.  This language exhibits Fate’s desire for Lynn to manage the trust using reasonable judgment to preserve it for appellant’s 
future 
support and maintenance.  
See id. 
at 8.  At first glance, this wording seems to conflict with Fate’s expressed intent for the trust to support appellant’s high standard of living.  However, Fate’s two instructions can be reconciled.  The trust instrument states that Lynn “shall distribute, from time to time, as much of the current trust net income, or accumulated trust net income, as shall be necessary to so maintain her.”  There is a similar provision allowing Lynn to use the trust corpus to maintain appellant if necessary.  “Maintain,” “time to time,” and “necessary” hardly give Lynn utter discretion to fund appellant’s every whim.  
See Estate of Dillard
, 98 S.W.3d at 395.  Rather, they evince a restriction on his discretion to distribute funds.    

So, like the testatrix in 
Rubion
, Fate created a support trust.  Given that, distributions of principal therefrom could be made only in ways commensurate with that purpose.  Because the trust’s purpose is to provide for appellant’s high standard of living both now and in the future, Lynn is required to use his discretion in distributing funds so that the trust is not depleted rapidly and wastefully.  
See
 
Rubion
, 308 S.W.2d at 8-9; 
Brault
, 493 S.W.2d at 579.  Lynn, like the trustee in 
Rubion
, must exercise his discretion to distribute trust income and corpus to appellant after considering her lifestyle needs, age, health, income, and size of the trust estate
.  See Rubion, 
308 S.W.2d at 10-11.  And, if upon considering those factors, Lynn reasonably concludes that a distribution is warranted, only then can it be made. 
See id.

3.  Appellant’s Other Arguments and Summary

Appellant’s last argument under her first issue is that the court erred by requiring her to submit documentation regarding her expenses and claims for standard of living to Lynn.  We disagree.  According to the trust instrument language, Lynn shall distribute funds to appellant when her own income cannot sustain her in the standard of living to which she is accustomed.  Only appellant has access to her periodic receipts, income, and expenses, and a trustee may require a beneficiary to provide him with information necessary to use his discretion.  
See First Nat’l Bank of Beaumont v. Howard
, 223 S.W.2d 694, 710 (Tex. Civ. App. 1949), 
rev’d on other grounds
, 149 Tex. 130, 229 S.W.2d 781 (1950).  Appellant failed to submit the necessary documentation.     

Accordingly, we sustain appellant’s first issue regarding the arguments (1) that the trust language is unambiguous and (2) that appellant must only exhaust her periodic receipts and income, and need not sell or exhaust other financial assets, before receiving trust distributions.  We overrule appellant’s first issue regarding her submission of receipts and expenses to Lynn and hold that the trial court did not err on that portion of this issue.  

In her second issue, appellant argues that the trial court erred by failing to find that she was entitled to distributions from the trust since Fate’s death.  Having determined that the trust distributions are required to support appellant’s standard of living at the time that Fate died, we hold that according to the trust language, the trial court must now determine what that standard of living was and then make trust distributions to compensate appellant from the date of Fate’s death.  Accordingly, we sustain appellant’s second issue.  

In her third issue, appellant argues that the trial court erred by not granting her attorney fees.  Under section 37.009 of the Texas Civil Practice and Remedies Code, the trial court may award reasonable attorney’s fees and costs in a declaratory judgment action “as are equitable and just.”
  Tex. Civ. Prac. & Rem. Code Ann
. § 37.009 (Vernon 1997); 
Fuqua v. Fuqua
, 750 S.W.2d 238, 246 (Tex. App.—Dallas,1988, writ denied).

The decision of whether to award attorney’s fees in a declaratory judgment action is within the trial court's discretion, and it will not be reversed absent a clear abuse of that discretion. 
 Oake v. Collin County,
 692 S.W.2d 454, 455 (Tex. 1985).  The trial court's discretion in this matter has been construed broadly.  Decisions have been upheld where the trial court failed to award attorney’s fees to the prevailing party and where the trial court awarded attorney’s fees to the losing party.  
Id.
 at 454-55; 
Dist. Judges of Collin County v. Comm’rs Court of Collin County,
 677 S.W.2d 743, 746 (Tex. App.—Dallas 1984, writ ref’d n.r.e.). 

Lynn has refused to pay any of appellant’s attorneys fees, but has paid between $10,000 and $20,000 in fees to appellees’ attorneys.  Because the prevailing party at trial has now changed, we sustain this issue and remand it to the trial court to reconsider the attorneys’ fees issue using its own discretion in light of this opinion.   

IV.  Conclusion

Having sustained appellant’s three issues, we reverse the trial court’s judgment and remand this case to the trial court for further proceedings consistent with this opinion.

TERRIE LIVINGSTON

JUSTICE

PANEL A: LIVINGSTON, HOLMAN, and WALKER, JJ.

DELIVERED: January 11, 2007

FOOTNOTES
1:
See City of Keller v. Wilson
, 
168 S.W.3d 802, 827
 (Tex. 2005); 
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999) (both setting out legal sufficiency standard of review); 
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965) (setting out factual sufficiency standard of review)
;
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
.

2:
Appellant’s income consisted of $933 in social security, $137.50 in fireman’s pension, and $67.25 in farm income.

3:
[T]he Trustee 
shall 
distribute . . . as much of the current trust net income, or accumulated trust net income, as shall be necessary to so maintain her.  If my wife’s own income and other financial resources, together with distributions of current and accumulated trust net income from this trust, are not sufficient to maintain her in such standard of living, then the Trustee 
shall 
distribute as much of the trust corpus as shall be necessary to so maintain her. [Emphasis added.]  

The word “shall” means that the trustee must follow the maker’s instructions.  
See In re Orsagh
, 151 S.W.3d 263, 267 (Tex. App.—Eastland 2004, original proceeding); 
Roberts v. Squyres
, 4 S.W.3d 485, 489 (Tex. App.—Beaumont 1999, pet. denied).