NO. 07-11-0088-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL C

 AUGUST 7, 2012

 ______________________________

 KELLY ANN O'SHEA DUNCAN, APPELLANT

 V.

 RITA M. O'SHEA, INDIVIDUALLY AND AS TRUSTEE OF THE 
 MARITAL DEDUCTION TRUST, THE DISCLAIMER TRUST, AND
 THE FAMILY TRUST OF JOHN JOSEPH CONNOR O'SHEA, APPELLEE

 _________________________________

 FROM THE 237[TH] DISTRICT COURT OF LUBBOCK COUNTY;

 NO. 2009-549,465; HONORABLE LES HATCH, JUDGE

 _______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
 MEMORANDUM OPINION
 Appellant, Kelly Ann O'Shea Duncan, appeals from a summary judgment order and final judgment entered following a bench trial in a trust action against Appellee, Rita M. O'Shea, individually and as trustee of the John Joseph Connor O'Shea, Jr. Marital Deduction Trust, the Disclaimer Trust, and the Family Trust. In support, Kelly asserts the trial court erred in (1) its construction of the Trusts' terms; (2) granting summary judgment in Rita's favor on Kelly's claim for conversion; (3) failing to find the evidence in support of Kelly's breach of fiduciary claim legally and factually sufficient; (4) failing to find the evidence in support of Kelly's fraud claim legally and factually sufficient; and (5) failing to remove Rita as Trustee for all the Trusts. We affirm the trial court's judgment. 
 Background
 On November 10, 1996, Rita's late husband, John Joseph Connor O'Shea, Jr., executed his Last Will and Testament providing for the establishment of three trusts upon his death: (1) a Marital Deduction Trust, (2) a Family Trust, and (3) a Disclaimer Trust. Six days later, on November 16, 1996, John died. The Will was duly probated and Rita was appointed the Independent Executrix of John's estate and Trustee of the Trusts created pursuant thereto. 
 Testimony established that during their marriage, John was "frugal but he was generous." Although Rita had a household budget of $1,500.00 per month, "if [she] wanted something, [she] got it." John bought her cars, horse trailers, raised barns, bought her land, remodeled a vacation home in Maine, and bought her a three and one-half carat diamond. As for his children, John bought them first and second vehicles, paid college expenses, and supported them when unemployed. Upon John's death in 1996, Rita was appointed his Independent Executrix of his estate and Trustee of the trusts established by his Will. She also inherited one-half their community property. John's one-half of their community estate was apportioned between the Marital and Family Trusts in accordance with the tax plan set forth in John's Will.
 Marital Deduction Trust
 The Marital Deduction Trust was initially funded by a stock brokerage account worth $75,000.00, one-half of the community residence worth $100,000.00, one-half of thirty-two acres in Hockley County worth $20,000.00, one-half of a lot in Fort Worth valued at $5,000.00, and one-half of John's office building and parking lot located at 1402 Texas Avenue, Lubbock, Texas. 
 Rita is the sole beneficiary of that Trust during her lifetime. The net income of the Marital Deduction Trust is to be distributed to Rita at least quarterly and its principal may be distributed to her as "necessary, when added to the funds reasonably available to [her] from all other sources . . . to provide for her health, support and maintenance in order to maintain her, to the extent reasonably possible, in accordance with the standard of living to which [she] is accustomed at the time of [John's] death." Upon Rita's death, the Marital Deduction Trust terminates and the remaining trust assets, if any, are to be distributed to John's descendants.
 In 2005, Rita sold the office building/parking lot for $240,000.00. Gary Lane, the CPA for both the Marital Deduction Trust and the Family Trust, testified Rita deposited one-half the sales proceeds in her personal account and the other half was mistakenly deposited in the Family Trust account rather than the Marital Deduction Trust account. Thereafter, Rita made a variety of distributions to her children. 
 Family Trust
 The Family Trust was initially funded by a stock brokerage account worth $780,000 and one-half the value of a home in Maine worth $900,000.00 -- totaling $1,680,000.00. 
 Rita is also the primary beneficiary of the Family Trust during her lifetime. As trustee, Rita is authorized to distribute both income and principal of the Family Trust to herself as "necessary, when added to the funds reasonably available to [her] from all other sources . . . to provide for her health, support and maintenance in order to maintain her, to the extent reasonably possible, in accordance with the standard of living to which [she] is accustomed at the time of [John's] death." The provisions of the Trust also provided that trust income and principal could be distributed to John's descendants if similar conditions were met, however, "such distributions [to his descendants] shall not, in the judgment of [his] Trustee jeopardize [Rita's] financial security." The Family Trust terminates on Rita's death and the remaining trust property, if any, is to be distributed to John's descendants. 
 In 2005, the Trust had income of $12,963.29 of which $10,860.61 was distributed to Rita. In 2006, the Trust had income of $8,551.89 and distributed $42,385.49 to Rita. Rita also used approximately $30,000.00 to purchase a trailer for her daughter, Kathleen.
 Rita's Income and Assets
 Rita's yearly income is derived primarily from the Family Trust's income, $7,000.00 annually, and her social security benefit, $1,800.00 per month or $21,600.00 annually. Although the Maine house generates $20,000.00 in rent annually, the Trusts' profits are substantially reduced by its taxes and upkeep expenses. She also operates a tack shop in Lubbock which generates some, albeit not significant, income. Her expenses related to the Lubbock residence include utilities, upkeep, property taxes, and homeowner's insurance, of approximately $4,276.00 annually. Her Medicare supplemental insurance is approximately $3,000.00 annually. She also pays property taxes on the Fort Worth lot, $125.00, and the Hockley County property, $1,000.00. Her personal assets include a stock brokerage account worth $400,000.00, half the value of the Lubbock residence worth $100,000.00, half the value of the Hockley County tract worth $20,000.00, half the value of the Fort Worth lot worth $5,000.00, and half the value of the Maine home worth $900,000.00 -- totaling $1,425,000.00. She has four credit cards with debt totaling approximately $25,000.00.
 Proceedings Below 
 In 2010, Kelly filed her First Amended Original Petition alleging actions against Rita for breach of fiduciary duty, fraud, and conversion, and against Kathleen for conversion. In addition to monetary damages, Kelly sought equitable relief in the form of a constructive trust on property transferred without adequate consideration. Kelly's claims against Kathleen were disposed of by an order granting a traditional motion for summary judgment. Kelly does not appeal that order. 
 On December 13, 2010, the trial court granted Rita's no-evidence motion for summary judgment on Kelly's action for conversion but denied the motion on Kelly's actions for breach of fiduciary duty and fraud. A bench trial was held and on February 15, 2011, the trial court signed its Final Judgment finding: (1) Kelly had standing to advance her claims for breach of fiduciary duty; (2) one-half of the proceeds from the sale of the law office building and parking lot were assets of the Marital Deduction Trust; (3) the purchase of the trailer for Kathleen was not authorized by the terms of the Family Trust; (4) distributions to or for the personal benefit of Rita from the Marital Deduction Trust principal or the Family Trust income or principal were properly allowable under the terms of the Trusts; (5) Rita's investment of Marital Deduction Trust assets in the business venture known as "Scopey" was permitted under the terms of the Trust; and (6) Rita's distributions to John's descendants (save and except the purchase of the trailer) were permitted under the terms of the Family Trust, but not permitted under the terms of the Marital Deduction Trust. The judgment further ordered Rita to individually reimburse the Family Trust for the $30,000.00 used to purchase the trailer for Kathleen and it imposed a constructive trust on the net proceeds from the sale of the office building/parking lot that Rita received as Trustee of the Marital Deduction Trust, "to the extent" that John's descendants received distributions from those proceeds. This appeal followed.
 Discussion
 Kelly first asserts the trial court erred in its construction of the Trusts' terms by finding (1) distributions to or for the personal benefit of Rita from the Marital Deduction Trust principal or the Family Trust income or principal were properly allowable; (2) the Marital Deduction Trust's Scopey investment was permissible; and (3) Rita's distributions to her children from the Family Trust were permissible. Kelly also asserts the trial court erroneously granted summary judgment on her conversion claim because Rita wrongfully made distributions from the Family Trust to John's descendants. She next asserts the evidence is legally and factually sufficient to find that Rita breached her fiduciary duties and committed fraud because she made distributions in violation of the Trusts. Finally, Kelly contends the trial court erred by not removing Rita as Trustee for all Trusts. 
 I. Construction of the Marital Deduction and Family Trusts
 The construction of a will or a trust instrument is a question of law for the trial court. Hurley v. Moody Nat'l Bank of Galveston, 98 S.W.3d 307, 310 (Tex.App. -- Houston [1[st] Dist.] 2003, no pet.) (citing Nowlin v. Frost Nat'l Bank, 908 S.W.2d 283, 286 (Tex.App. -- Houston [1[st] Dist.] 1995, no writ)). As such, the trial court's conclusion of law is subject to de novo review. Keisling v. Landrum, 218 S.W.3d 737, 741 (Tex.App. -- Fort Worth 2007, pet. denied).
 In interpreting a will or trust, we ascertain the intent of the testator or grantor. See Eckels v. Davis, 111 S.W.3d 687, 694 (Tex.App. -- Fort Worth 2003, pet. denied). We do so from the language used within the four corners of the instrument. See Shriner's Hosp. for Crippled Children of Tex. v. Stahl, 610 S.W.2d 147, 151 (Tex. 1980); Eckels, 111 S.W.3d at 694. If the language is unambiguous and expresses the grantor's intent, we need not construe the trust instrument because "it speaks for itself." Hurley, 98 S.W.3d at 310. We do not focus on what the grantor intended to write but the meaning of the words he actually used. San Antonio Area Foundation v. Lang, 35 S.W.3d 636, 639 (Tex. 2000). 
 If, on the other hand, the meaning of the instrument is uncertain or "reasonably susceptible to more than one meaning," the instrument is ambiguous; In re Ellison Grandchildren Trust, 261 S.W.3d 111, 117 (Tex.App. -- San Antonio 2008, pet. denied) (quoting Eckels, 111 S.W.3d at 694)), and evidence of the grantor's situation, the surrounding circumstances and like indicia which enable the court to place itself in the testator's shoes at the time the document was executed may be admissible. Estate of Dillard, 98 S.W.3d 386, 392 (Tex.App. -- Amarillo 2003, no pet.) (citing San Antonio Area Foundation, 35 S.W.3d at 639)). 
 A. Rita's Standard of Living
 Kelly contends the trial court erred in determining that Rita has not spent for her own personal benefit more than was allowable under the terms of the Trusts because she was withdrawing more income and principal than was necessary to maintain her standard of living prior to John's death. She also asserts John's Will is ambiguous because it fails to express any intent regarding what amount is necessary to maintain Rita's standard of living as it existed prior to his death. 
 As Trustee, Rita was and is authorized to make distributions to herself "as are necessary, when added to the funds reasonably available to [her] from all other sources . . . to provide for her health, support and maintenance in accordance with the standard of living to which [she] is accustomed at the time of [John's] death." Such a provision is unambiguous in its intent to maintain Rita in the standard of living to which she was accustomed at John's death. Keisling, 218 S.W.3d at 743. 
While Kelly maintains Rita's standard of living prior to John's death was "frugal" and her current sources of income equal or exceed the $1,500.00 household budget she operated under during their marriage, this assertion overlooks Rita's testimony that, while they were married, John was generous with his gift-giving not only towards her but also his children. Furthermore, notwithstanding her income sources, Rita testified that, considering her expenses, she lives on less now than when she was married to John prior to his death. 
 Further, John's use of the words "support" and "maintenance" in the Trust instruments evinces the creation of "support trusts." See State v. Rubion, 158 Tex. 43, 308 S.W.2d 4, 8-10 (1957). In such trusts, the trustee is obligated to make his or her decision whether to authorize a distribution after considering the following indicia: (1) the size of the trust estate, (2) the beneficiary's age, life expectancy, and condition of life, (3) his or her present and future needs, (4) the other resources available or the beneficiary's individual wealth, and (5) his present and future health, both mental and physical, to name a few. See Keisling, 218 S.W.3d at 744; Estate of Dillard, 98 S.W.3d 386, 395 (Tex.App. -- Amarillo 2003, pet. denied). Thus, a distribution for Rita's health, support, and maintenance may be made from the Trusts only after a determination is made that the distribution meets the Trusts' requirements and "considering [Rita's] needs, age, condition, separate resources, the size of the Trusts, health and the like." Id. 
The record here contains evidence of the size of the Trusts' estates and the other resources available to Rita. Although the record contains some evidence of Rita's past and future expenses, there is no evidence concerning her age, life expectancy, condition of life, and health -- mental or physical, that would have limited her ability to have made the distributions at issue in accordance with the terms of the Trusts. Accordingly, based on the foregoing, we agree with the trial court that Rita has not spent for her own personal benefit more than what is allowed under the distribution standards applicable to the Trusts. 
 B. Scopey Investment
 Kelly next asserts the trial court erred by finding that the Scopey investment was permissible under the terms of the Marital Deduction Trust. Paragraph 10.1(e) of Article X of John's Will entitled Fiduciary Provisions expressly authorizes Rita, as Trustee, "[t]o invest and reinvest [John's] estate and each of the trust estates in any kind of property whatsoever, real or personal . . . whether or not productive of income." See also Tex. Prop. Code Ann. § 113.056 (West 2007). Testimony supports the conclusion that the expenditure was an investment and not a distribution. Accordingly, we agree with the trial court that Article X permits Rita's investment of Marital Deduction Trust funds in the Scopey business. 
C. Family Trust Distributions 
Kelly next asserts the trial court erred by approving Rita's distributions to John's descendants under the Family Trust provisions because the distributions do not relate to their health, support, maintenance and education, and those distributions jeopardize Rita's financial security as evidenced by her credit card debt.
Rather than explain why the distributions to John's descendants do not relate to their health, support, maintenance, and education, Kelly simply concludes the distributions do not meet the requirements of the Family Trust. Texas Rule of Appellate Procedure 38.1(h) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). A failure to provide substantive analysis of an issue waives the complaint. See Taylor v. Meador, 326 S.W.3d 682, 684 (Tex.App. -- El Paso 2010, no pet.); Eastin v. Dial, 288 S.W.3d 491, 502 (Tex.App. -- San Antonio 2009, pet. denied). Accordingly, Kelly has waived this argument.
 In addition, Kelly's assertion that the distributions jeopardize Rita's financial security is unsupported by the record. Notwithstanding the Trusts' assets available for future distribution, Rita has personal assets of well over a million dollars. Further, $20,000.00 of the $25,000.00 credit card debt represents a running account used to purchase stock for her tack shop. Under these circumstances, we cannot say as a matter of law that the distributions violated the Family Trust's terms. Kelly's first issue is overruled.
II. Summary Judgment
Kelly next asserts the trial court erroneously granted Rita's no-evidence motion for summary judgment on her conversion action. In support, Kelly asserts the trial court was precluded from granting summary judgment in Rita's favor because the record raised contested issues of material fact with regard to each element necessary to establish conversion. We disagree.
A. Standard of Review
We review the trial court's summary judgment de novo. Provident Life and Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is appropriate when there is no genuine issue as to any material fact and judgment should be granted in favor of the movant as a matter of law. Diversicare General Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2003). 
In reviewing a no-evidence summary judgment motion, we examine the record in the light most favorable to the nonmovant. Forbes, Inc. v. Granada Biosciences, Inc., 124 S.W.3d 167, 172 (Tex. 2003). If the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, summary judgment is improper. Tex. R. Civ. P. 166a(i); Forbes, Inc., 124 S.W.3d at 172 (citing Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002)). 
B. Conversion 
"The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion." Waisath v. Lack's Stores, Inc., 474 S.W.2d 444, 447 (Tex. 1971). The elements of a cause of action for conversion are: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; and (3) the defendant refused plaintiff's demand for return of the property. Hunt v. Baldwin, 68 S.W.3d 117, 131 (Tex.App. -- Houston [14[th] Dist.] 2001, no pet.). 
Kelly's action for conversion fails because there is no evidence Kelly had possession of, or was entitled to possession of the Trusts' assets. Rita is the Marital Deduction Trust's sole beneficiary and, by its terms, no distributions are to be made to anyone else during her lifetime. Under the Family Trust, she is "primary" beneficiary. As Trustee for the Trusts, she holds title to, and has the right to possession of, the Trusts' income and corpus. See Beckhal v. Atwood, 518 S.W.2d 593, 598 (Tex.Civ.App. -- Amarillo 1975, no writ). 
At best, John's Will gives his descendants, including Kelly, the possibility of a distribution from the Family Trust during Rita's lifetime or an inheritance from the Marital Deduction and Family Trusts' assets upon Rita's death. See Davis v. Davis, 734 S.W.2d 707, 709-10 (Tex.App. -- Houston [1[st] Dist.] 1987, writ ref'd n.r.e.) ("The possibility of inheritance does not create a present interest or right of title in property.") As such, John's descendants hold equitable title to the Family Trust's corpus and may be entitled to a distribution if Rita exercises her discretion as Trustee in accordance with the Trust's terms. Rekdahl v. Long, 417 S.W.2d 387, 391 (Tex. 1967). Further, both Trusts terminate upon Rita's death and John's descendants may inherit the Trusts' assets, if any remain. Thus, John's descendants have a remainder interest in any property that might remain in either Trust upon Rita's death. See Black's Law Dictionary 1317-18 (8[th] Ed. 2004) (A remainder interest is "[a] future interest arising in a third person . . . who is intended to take after the natural termination of the preceding estate.") The terms of the Trusts make clear that John intended to provide for his wife as the sole or primary beneficiary during her lifetime and the entire corpus of both Trusts could be expended for Rita's benefit during her lifetime at her sole discretion as Trustee. See Eisen v. Capital One, 232 S.W.3d 309, 313-14 (Tex.App. -- Beaumont 2007, pet. denied). 
We have examined the record and Kelly has failed to produce any evidence that she owns, has possession of, or is entitled to possession of any income or corpus belonging to either Trust. Neither has she adduced any evidence that Rita assumed or exercised dominion and control over the Trusts' property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Kelly's rights. Accordingly, because evidence of an element of conversion is completely lacking, the trial court properly granted summary judgment in Rita's favor on Kelly's cause of action for conversion. Kelly's second issue is overruled. 
III. Legal and Factual Sufficiency
By her third and fourth issues, Kelly contends the trial court's judgment was in error because her "evidence was legally and factually sufficient to prove each element required" for breach of fiduciary duty and fraud. To the extent that Kelly's complaint is that the trial court failed to find breach of a fiduciary duty or fraud as a matter of law, we cannot say that the court did or did not make those findings. The Final Judgment does not expressly find so one way or the other and, despite the fact that Kelly requested findings of fact and conclusions of law, no such findings or conclusions were entered by the trial court. 
To preserve a complaint for appellate review, a party must obtain either an express or implicit ruling from the trial court. Tex. R. App. P. 33.1. Because Kelly did not make a further request as required by Rule 297 of the Texas Rules of Civil Procedure, an adverse ruling cannot be implied. See Pharo v. Chambers County, 922 S.W.2d 945, 948 (Tex. 1996) (finding that in the absence of findings of fact and conclusions of law, an appellate court must presume that the trial court made all the findings necessary to support its judgment). Having failed to obtain an express or an implied adverse ruling, no error is preserved for review. Issues three and four are overruled. 
IV. Removal
Finally, Kelly asserts the trial court erred in failing to remove Rita as Trustee for all Trusts under the Texas Trust Code; Tex. Prop. Code Ann. § 113.082 (West 2007), because she materially violated the terms of the Trusts, resulting in a material financial loss to the Trusts and she is hostile against a beneficiary, to-wit: Kelly, so much so as to adversely affect her performance as Trustee for both Trusts.
Kelly's First Amended Original Petition did not seek a remedy of removal due to any statutory or common law breach of Rita's fiduciary duties. Although Kelly testified at trial that she wanted the trial court to remove her mother as trustee, she did not move to amend her First Amended Original Petition nor present any evidence regarding a suitable replacement trustee. Rita's counsel, on the other hand, informed the trial court during cross-examination that Kelly did not plead the remedy and, in closing argument, opposed the trial court's consideration of the remedy, argued there had been no discovery regarding who could or would serve as a substitute trustee, and denied there had been any trial by consent. Kelly's counsel countered in closing that removal was an alternative remedy available to the trial court through Kelly's action for breach of fiduciary duty.
It is axiomatic that a trial court's judgment must conform to the pleadings, the nature of the case proved, and the verdict. Tex. R. Civ. P. 301. See Stoner v. Thompson, 578 S.W.2d 679, 682-83 (Tex. 1979) (absent trial by consent, trial court cannot grant relief without pleadings to support it); Prize Energy Resources, L.P. v. Hoskins, 345 S.W.3d 537, 567 (Tex.App. -- San Antonio 2011, no pet.) (trial court may not grant relief on a theory of recovery not sufficiently stated in the party's live pleadings or tried by consent). Kelly did not seek to amend her petition to assert the remedy under a statutory action for removal or under her common law action of breach of fiduciary duty. Accordingly, she did not preserve the issue for appeal. See Tex. R. App. P. 33.1(a); Offutt v. Southwestern Bell Internet Services, Inc., 130 S.W.3d 75, 78 (Tex.App. -- San Antonio 2003, no pet.). 
Further, trial by consent should only be used in exceptional cases; Austin Area Teachers Federal Credit Union v. First City Bank -- Northwest Hills, N.A., 825 S.W.2d 795, 800 (Tex.App. -- Austin 1992, writ denied), where the evidence on the issue is developed under circumstances indicating that both parties understood the issue in the case, and the other party failed to make an appropriate complaint. Emerson Electric Co. v. American Permanent Ware Co., 201 S.W.3d 301, 309 (Tex.App. -- Dallas 2006, no pet.). Trial by consent is inapplicable here where evidence of the unpleaded matter (the remedy of removal) is relevant to the pleaded issues, i.e., Kelly's action for breach of fiduciary duty. See Boyles v. Kerr, 855 S.W.2d 593, 601 (Tex. 1993) (trial by consent inapplicable where evidence of pleaded action relevant to unpled action). See also Moore v. Alta Energy Technologies, Inc., 321 S.W.3d 727, 734 (Tex.App. -- Houston 2010, pet. denied); In the Interest of J.M. and L.M., 156 S.W.3d 696, 706 (Tex.App. -- Dallas 2006, no pet.) (collected cases cited therein). Accordingly, Kelly's fifth issue is overruled.
 Conclusion
The trial court's judgment is affirmed.
 Patrick A. Pirtle
 Justice