

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00039-CV

**GLENN YOUNGER AND RUTH YOUNGER, APPELLANTS**

**V.**

**ALLAN YOUNGER, GAIL YOUNGER, AND MICHAEL YOUNGER, APPELLEES**

On Appeal from the 25th District Court[1]
Guadalupe County, Texas,
Trial Court No. 17-1990-CV-A, Honorable Margaret G. Mirabal, Presiding

October 22, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellants, Glenn and Ruth Younger (Glenn) appeal a final judgment in favor of Appellees, Allan, Gail, and Michael Younger (Allan)[2] in a trust contest wherein Glenn and Ruth sought to "disinherit" Allan from a portion of property owned by Ellis. Glenn asserts the trust's unambiguous terms permitted Ruth to divest Allan by amending the trust.

---

[1] Originally appealed to the Fourth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 481.115(b) (West 2017).

[2] Gail and Michael are Allan's wife and son, respectively.

Alternately, Glenn argues that Ruth has a right to possess the real property during her lifetime (life estate) and that the district court should not have awarded Allan a present interest in the property. Conversely, Allan contends the trust directs that Ellis's intentions became irrevocable when he died and that Allan holds a present fee interest in Ellis's share of the property.

The 25th District Court of Guadalupe County, Texas held that Ellis's testamentary instruments were unambiguous and ordered that Allan holds a present fee interest in Ellis's share of "Parcel Two," the real property that is the subject of this appeal, plus one half of Ellis's share of other property. Because we find the Trust's terms to be susceptible to two or more reasonable interpretations, we reverse the judgment of the district court and remand this matter for further proceedings.

Background

In February 1947, Ellis and Ruth married. During their marriage, they had three children—Gary, Glenn, and Allan. In Ellis's Will and by the express terms of the Trust, Gary was disinherited from receiving any property.

*The Will*

On October 20, 2014, Ellis executed the "Last Will and Testament of Ellis L. Younger." The Will indicates that earlier the same day, Ellis and Ruth had executed "The Younger Living Trust." His Will described the Trust as a revocable living trust to be funded by the assets of his probate estate on his death.[3]

---

[3] One-half the community property belonging to him and Ruth, and his separate property.

2

*General Warranty Deed*

On the same day that the Last Will and Testament and Trust were executed, Ellis and Ruth deeded 34.91 acres of real property located in Guadalupe County, Texas, to "Ruth L Younger and Glenn Ellis Younger, Trustees, or Successors in Trust under the Younger Living Trust." This property purportedly includes the tract of land that is the subject of the present dispute.

*The Younger Living Trust*

The Younger Living Trust states the intention to include the real, personal, tangible, and intangible property owned by Ellis and Ruth, subject to certain exceptions. When a transfer was made of a Grantor's community property, the Trust directed it was to "retain its character as community property during our lives, to the same extent as if it had not been transferred to our trust." Any of a Grantor's separate property was to remain "separate" in the Trust. The Trust did not expressly identify the existence of Ellis's Will having been executed on the same day, but it does provide direction on how the Will's executor and the Trust's trustee were to coordinate their efforts.

*Ellis Dies; Ruth Attempts to Amend the Trust*

In December 2014, two months after the testamentary instruments were executed and the Guadalupe County property was transferred, Ellis died. In August 2017, Ruth sought to amend the Younger Living Trust to state that "we" include Allan among the Younger sons who are "disinherited" from receiving Trust distributions. Ruth also sought to amend to eliminate Allan as having the right to receive certain property, including a portion of the real property transferred to the Trust. On November 13, 2018, Ruth and

3

Glenn executed a document that purported to restate the original Trust in full and to incorporate Ruth's "August 30, 2018" [*sic*] amendments.

*Litigation Regarding the Younger Living Trust*

Two days before Ruth first sought to amend the Younger Living Trust, litigation had ensued regarding alleged rights to the property transferred by Ellis. Ruth and Glenn filed suit for forcible detainer suit in Guadalupe County Justice Court, alleging that Allan (and his family) lacked "any legal or equitable interest in the subject property whatsoever." That suit was later abated when litigation was brought in the district court regarding ownership interests, if any, in the property.

In the district court, both sides requested a declaratory judgment in their favor, among other claims. In November 2018, Allan filed a fourth amended petition alleging that Ruth's purported amendment was contrary to the original terms of the Trust, or alternatively, that the relevant sections of the Trust are ambiguous.

Trial before the bench took place on November 28, 2018. After Allan non-suited claims for breach of fiduciary duty, failure to provide accounting, promissory estoppel, and unjust enrichment, the district court only considered the parties' requests for declaratory judgment. The district court found the following, among other things:

- The October 20, 2014 Younger Living Trust document is unambiguous;
- Ellis's October 20, 2014 Last Will and Testament is unambiguous;
- With some exceptions not relevant here, all of Ruth's and Ellis's property (including the Guadalupe County real property) transferred to the Younger Living Trust.
- The Trust was never amended prior to Ellis's death on December 11, 2014.

4

- Upon Ellis's death, the Trust became irrevocable as it pertains to the administration and distribution of Ellis's property.

- With regard to personal property, the Trust specifies that Ellis Younger's "tangible personal property" is to be allocated to the Survivor's Trust. However, there is no corresponding provision regarding allocation of real estate or other assets.

- The Trust's only reference to distribution of real property is found in Article Eight, which allocates "Real Property Parcel Two and 50% of all other assets" to Allan.

Thereafter, the district court awarded Allan the one-half interest in Parcel Two that had been owned by Ellis, as well as "Ellis Younger's 25% interest in all other assets," subject to the provisions for administering said trust property. In addition, the district court barred Ruth and Glenn from evicting Allan from Parcel Two and awarded Allan attorney's fees (including conditional attorney's fees in the event of an unsuccessful appeal by Ruth and Glenn).

Standard of Review

The construction of an unambiguous will or a trust instrument is a question of law and is subject to a de novo standard of review on appeal. *Hurley Moody Nat'l Bank of Galveston*, 98 S.W.3d 307, 310 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Keisling v. Landrum*, 218 S.W.3d 737, 741 (Tex. App.—Fort Worth 2007, pet. denied). Identical rules apply to the construction of trusts and wills. *Compare In re Ellison Grandchildren Trust*, 261 S.W.3d 111, 117 (Tex. App.—San Antonio 2008, pet. denied) (construction of trust), *and San Antonio Area Found v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000) (construction of will). *See Andresakis v. Modisett*, No. 07-16-00003-CV, 2017 Tex. App. LEXIS 42, at *7-8 (Tex. App.—Amarillo 2017, pet. denied) (mem. op.). In interpreting a will or trust, we ascertain the intent of the testator or grantor from the language used within

5

the four corners of the instrument. *See Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980); *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied). If the language is unambiguous and expresses the grantor's intent, we need not construe the trust or will instrument because "it speaks for itself." *Hurley*, 98 S.W.3d at 310. We do not focus on what the grantor intended to write but the meaning of the words he actually used. *San Antonio Area Foundation v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000).

If the words are not open to more than one construction, however, then "the court can look to nothing other than the face of the instrument." *Estate of Dillard*, 98 S.W.3d 386, 392 (Tex. App.—Amarillo 2003, no pet.). If, on the other hand, the meaning of the instrument is uncertain or "reasonably susceptible to more than one meaning," the instrument is ambiguous. *In re Ellison*, 261 S.W.3d at 117.

Analysis

Allan contends that the Trust should be construed in the same manner as the district court because his right to a distribution of one-half of Parcel Two and the other assets became "irrevocable" at Ellis's death. Ruth and Glenn, on the other hand, argue that the real property became a part of a "Survivor's Trust" that is to be distributed to Ruth either in fee or as a life estate. Either way, Ruth and Glenn contend that Allan lacks present standing to assert property rights at the present time. We agree with the district court that Allan possesses standing to assert claims and seek declaratory relief in this matter. We also hold that because the Trust's language is reasonably susceptible to more than one meaning, the district court erred in finding the instrument to be

6

unambiguous and in awarding Allan a present interest in the real property as a matter of law. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

*Allan's Standing in the Underlying Suit*

Glenn argues that because Allan does not legally possess an interest in Trust property, he lacks standing. As one who was originally named as a beneficiary in the Trust and is affected by the courts' interpretation and application of the Trust instrument, Allan is, at minimum, an "interested person" as defined in section 111.004(7) of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 111.004(7) (defining interested person as a "trustee, beneficiary, or any other person having an interest in or a claim against the trust," and instructing that such "must be determined according to the particular purposes of and matter involved in any proceeding."). Any interested person may bring a suit to construe a trust instrument, determine the applicable law, ascertain beneficiaries, and determine questions arising in the administration or distribution of a trust. TEX. PROP. CODE ANN. §§ 115.001, 115.011(a).

The entire legal dispute before the district court examined what right, if any, that Allan holds in any Trust property and whether Ruth can retroactively amend the Trust to "disinherit" Allan from Ellis's property interests. It therefore strains logic to believe that Allan lacks the power to seek an answer to these questions in litigation, particularly given that Glenn and Ruth seek answers to these identical interests in the hope of divesting Allan. Glenn's complaint about Allan's purported lack of standing is overruled.

7

*Ruth's Purported Amendment of the Trust*

We next consider Glenn's argument that Ruth amended the Trust to exclude Allan as a "contingent beneficiary." We overrule this issue. Glenn argues that Ruth's amendment is authorized pursuant to section 7.02, which provides, "The surviving Grantor has the absolute right to amend the Survivor's Trust's terms by restating them in full." The concept of a "Survivor's Trust" is first contemplated in section 5.01:

> After the first of us dies, the surviving Grantor's interest in any community property of our trust and the surviving Grantor's separate trust property will be referred to as the *surviving Grantor's trust property.* The surviving Grantor's trust property will be referred to as the Survivor's Trust, and our Trustees shall administer the Survivor's Trust as provided in Article Seven.

(emphasis in original). When Ellis died, Ruth became the surviving Grantor; her community property and separate trust property became the Survivor's Trust. Ellis's property interests, however, were identified differently: his interest in any community and separate property was called "the deceased Grantor's trust property."

For reasons discussed in more detail below, Glenn reasons that Ellis's "deceased Grantor's trust property" became a part of the Survivor's Trust. Even if that is true, Glenn's proposed conclusion from section 7.02—that Ruth's right to amend the Survivor's Trust empowered her to amend the Trust "in full" to "disinherit" Allan from receiving Ellis's property—ignores the remaining provisions in the Trust that limit Ruth's unilateral ability to amend. Under section 1.04(b), for example, Ellis and Ruth were permitted to amend, restate, or revoke the Trust, in whole or part, if they acted jointly. When acting individually, however, Ruth or Ellis only retained the right to amend the Trust's terms "as to each of our separate property." There is no evidence that Ellis ever amended the Trust's terms

8

regarding distribution of his property. Consistent with the plain language of section 1.04(b), any attempt by Ruth to amend the Trust could therefore only be effective as to her separate Trust property.

The court's construction of the Trust is further supported by section 5.02, which provides that upon Ellis's death, "our trust will become irrevocable as it pertains to the administration and distribution of the deceased Grantor's trust property." When the Trust's terms for administration and distribution became "irrevocable" upon Ellis's death, it meant that distribution of Ellis's property could not be revoked or altered. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 663 (11th ed. 2003) (defining "irrevocable" as "not possible to revoke: UNALTERABLE"). To interpret section 7.02's amendatory provision as permitting Ruth to rename the distributee of Ellis's property would improperly allow the Trust's provisions in effect for how Ellis's property was to be distributed to be altered, in derogation of the Trust's remaining instructions.

To the extent that any question remains, the other language within Article Seven demonstrates the error in Glenn's proposed interpretation of section 7.02. Specifically, section 7.04 provides that if "any of the deceased Grantor's [i.e. Ellis's] trust property is allocated to the Survivor's Trust" the Trustee is commanded to "hold this property in a separate share of the Survivor's Trust during the surviving Grantor's [i.e., Ruth's] lifetime." Two sentences after this instruction, the section makes clear in relevant part that Ruth "may not amend the terms of the separate share . . . ." Section 7.04 therefore works hand-in-glove with the other instructions detailing what Ruth could, and could not, amend; notwithstanding section 7.02's general authority for Ruth to amend the Survivor's Trust,

9

she could not change the terms regarding how Ellis's trust property was to be distributed. We accordingly overrule Glenn's issue in this regard.

*The In Terrorem Clause*

Glenn alternatively argues Allan "forfeited" any interest in the Trust because he brought claims to oppose Ruth's purported amendment to the trust. Section 14.03 provides as follows:

> If any person attempts to contest or oppose the validity of this trust or any amendment to this trust, or commences, continues, or prosecutes any legal proceedings to set this trust aside, then that person will forfeit his or her share, cease to have any right or interest in the trust property, and will be considered to have predeceased the last of us to die for purposes of this instrument.

We hold that the district court did not err in rejecting Glenn's argument regarding forfeiture.

Earlier this year, we wrote that in-terrorem clauses are to be strictly construed and that forfeiture should be avoided if possible. *In re Estate of Bryant*, No. 07-18-00429-CV, 2020 Tex. App. LEXIS 2131, at *31 (Tex. App.—Amarillo Mar. 11, 2020, no pet.) (mem. op.). The record indicates that in September 2017, Glenn and Ruth invoked the validity of her purported amendment to the Survivor's Trust (as defined in the Trust) as the basis for excluding Allan as a beneficiary. In 2018, Allan's pleading was amended to contest Glenn's and Ruth's position and the circumstances that influenced that amendment. We do not hold that Allan's acts clearly fall within the express terms of the clause; Allan's position was to uphold the terms of the Trust as executed by Ellis and which this Court holds to be irrevocable.

10

Moreover, such proffered logic would be short-circuiting, as Appellants would be disqualified by application of the same clause. Glenn and Ruth brought a counterclaim to contest the ongoing validity of the original Trust's terms, claiming they had been amended. Per application of section 14.03, Glenn and Ruth are persons who "attempt[] to contest or oppose the validity of this trust . . . or continue[] or commences, continues, or prosecutes any legal proceeding to set this trust aside . . . ." Glenn and Ruth also brought the present appeal (a new legal proceeding) to assert the non-continuing effect of the original Trust's terms. *See In re Estate of Hamill*, 866 S.W.2d 339, 343 (Tex. App.—Amarillo 1993, no pet.) (holding that even if the original action did not trigger no-contest clause, appellant's subsequent appeal of the trial court's judgment that challenged the trust was "clearly a violation" of the clause). Rather than holding that all parties have forfeited their interests, we hold that the district court correctly refused to adopt the position that Glenn invites us to take.

*What Interest Does Allan Have?*

We hold that the Trust's terms are irrevocable as they pertain to Ellis's property and that such terms therefore determine how the property is to be distributed. However, we do not agree with the district court that the original terms unambiguously give Allan a present fee interest in Parcel Two. In review of a declaratory judgment suit, we possess the responsibility of rendering the judgment that the district court should have rendered. *City of Galveston v. Giles*, 902 S.W.2d 167, 172 (Tex. App.—Houston [1st Dist.] 1995, no writ). Because we hold that the terms of the Trust are susceptible to more than one reasonable interpretation, we reverse the judgment and remand for resolution of the ambiguity.

11

The district court accepted Allan's proposed interpretation that section 8.01 gives Allan the right to a present distribution of Ellis's portion of Parcel Two; indeed, section 8.01 contains the only express mention of "Parcel Two." However, because distributions pursuant to Article Eight are applicable to "remaining trust property (not distributed under prior Articles of this instrument), or other trust property allocated to this Article," we must first examine the preceding articles of the Trust.

Disposition of tangible personal property is addressed in Article Six. In section 6.05, the reader is instructed that Ellis's "remaining property will be administered as provided in the following Articles." At oral argument, Allan argued that Ellis's property did not constitute "remaining property" under section 6.05 because it had already been administered by an earlier provision. However, we can find no provision in which the property at issue would have been distributed or otherwise avoided being the "remaining property" under section 6.05. We agree with Glenn that the "remaining property" to be allocated under Article Seven includes Ellis's property.

Although we previously held that the Trust prohibits Ruth from *amending* the terms of Ellis's separate share, confusion abounds regarding if the property can be distributed in another way so as to effectively deprive Allan. Here, we find the terms to be susceptible to more than one reasonable interpretation. For example, the first sentence in section 7.04 proposes that Ruth is a life tenant to Ellis's property:

> To the extent that any of the deceased Grantor's trust property is allocated
> to the Survivor's Trust, our Trustee shall hold this property in a separate
> share of the Survivor's Trust during the surviving Grantor's lifetime.

When read alongside section 5.02's "irrevocability" provision as to the "administration and distribution of the deceased Grantor's trust property," a reasonable interpretation of the Trust is that Ruth's life estate grants her only the power to possess Ellis's property during her lifetime, not to dispose of it. Per section 7.10, the "unappointed balance or remainder" of the Survivor's Trust, which would include Ellis's property, would be administered pursuant to Article Eight at Ruth's death. This interpretation of the trust would suggest that although the district court erred in awarding Allan a present fee interest in Parcel Two, he might hold a vested interest as a remainderman, with possession to become effective at the termination of the life estate. *Caples v. Ward*, 107 Tex. 341, 345-46, 179 S.W. 856, 858 (1915).

However, a contrary interpretation can be gleaned from the existence of other provisions in Article Seven. This Court has held that additional powers granted to a life tenant in an instrument may be used to divest a remainderman of his vested interest in property. *Medlin v. Medlin*, 203 S.W.2d 635, 641 (Tex. Civ. App.—Amarillo 1947, writ ref'd) (construction of a will). Significance is found in section 7.06, which commands the trustee to "distribute as much of the principal of the Survivor's Trust to [Ruth]" as she requests in writing, and to permit a discretionary distribution "as our Trustee determines necessary or advisable for any purpose."

We are thus faced with the interpretive conflict: Under Article Seven, the trustee appears empowered to distribute Ellis's property to Ruth notwithstanding Allan's interest as a remainderman. However, this would appear to conflict with section 5.02's instructions that the Trust's terms regarding "administration and distribution" of Ellis's property became irrevocable when Ellis died. Did this section intend to affix the rights in

13

each beneficiary, or does it mean the trustee's responsibilities to make a distribution cannot change? Because we cannot determine with certainty from the face of the trust instrument whether Ellis intended to empower Ruth and/or the trustee to include his property among that which is subject to distribution under Article Seven, we hold that the existence of two reasonable interpretations prevents the instrument from being construed as a matter of law.

Conclusion

In conclusion, we hold that the district court erred in awarding Allan a present fee interest in Parcel Two. Either the Trust instruments express an intent that Allan hold an irrevocable remainder interest in Parcel Two with possession to become effective at the termination of the life estate, or they intend that any remainder interest would remain subject to divestment during Ruth's lifetime. An ambiguity in the Trust's terms requires resolution of this question by a finder of fact.[4] We reverse the district court's judgment and remand this matter to the trial court for further proceedings to resolve the ambiguity.


Lawrence M. Doss
Justice

---

[4] Because we remand, it is unnecessary to address Glenn's request for an award of attorney's fees; the district court possesses the discretion to consider whether any fee award is "equitable and just" after additional evidence is presented. TEX. CIV. PRAC. & REM. CODE § 37.009.