NO. 07-11-0088-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

AUGUST 7, 2012

_____

KELLY ANN O'SHEA DUNCAN, APPELLANT

V.

RITA M. O'SHEA, INDIVIDUALLY AND AS TRUSTEE OF THE
MARITAL DEDUCTION TRUST, THE DISCLAIMER TRUST, AND
THE FAMILY TRUST OF JOHN JOSEPH CONNOR O'SHEA, APPELLEE

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2009-549,465; HONORABLE LES HATCH, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Kelly Ann O'Shea Duncan, appeals from a summary judgment order

and final judgment entered following a bench trial in a trust action against Appellee, Rita

M. O'Shea, individually and as trustee of the John Joseph Connor O'Shea, Jr. Marital

Deduction Trust, the Disclaimer Trust, and the Family Trust. In support, Kelly asserts

the trial court erred in (1) its construction of the Trusts' terms; (2) granting summary

judgment in Rita's favor on Kelly's claim for conversion; (3) failing to find the evidence in support of Kelly's breach of fiduciary claim legally and factually sufficient; (4) failing to find the evidence in support of Kelly's fraud claim legally and factually sufficient; and (5) failing to remove Rita as Trustee for all the Trusts. We affirm the trial court's judgment.

## BACKGROUND

On November 10, 1996, Rita's late husband, John Joseph Connor O'Shea, Jr., executed his *Last Will and Testament* providing for the establishment of three trusts upon his death: (1) a Marital Deduction Trust, (2) a Family Trust, and (3) a Disclaimer Trust.[1] Six days later, on November 16, 1996, John died. The *Will* was duly probated and Rita was appointed the Independent Executrix of John's estate and Trustee of the Trusts created pursuant thereto.

Testimony established that during their marriage, John was "frugal but he was generous." Although Rita had a household budget of $1,500.00 per month, "if [she] wanted something, [she] got it." John bought her cars, horse trailers, raised barns, bought her land, remodeled a vacation home in Maine, and bought her a three and one-half carat diamond. As for his children, John bought them first and second vehicles, paid college expenses, and supported them when unemployed. Upon John's death in 1996, Rita was appointed his Independent Executrix of his estate and Trustee of the trusts established by his *Will*. She also inherited one-half their community property.[2]

---

[1] The Disclaimer Trust is not at issue here. John's *Will* provided that, if any property in the residue of his estate was disclaimed by his wife or her personal representative, the property would be placed in the Disclaimer Trust. Rita did not disclaim any property and the Trust remains unfunded.

[2] The value of Rita's estate at John's death was approximately $1,900,000.00.

2

John's one-half of their community estate was apportioned between the Marital and Family Trusts in accordance with the tax plan set forth in John's *Will*.

### MARITAL DEDUCTION TRUST

The Marital Deduction Trust was initially funded by a stock brokerage account worth $75,000.00, one-half of the community residence worth $100,000.00, one-half of thirty-two acres in Hockley County worth $20,000.00, one-half of a lot in Fort Worth valued at $5,000.00, and one-half of John's office building and parking lot located at 1402 Texas Avenue, Lubbock, Texas.[3]

Rita is the sole beneficiary of that Trust during her lifetime. The net income of the Marital Deduction Trust is to be distributed to Rita at least quarterly and its principal may be distributed to her as "necessary, when added to the funds reasonably available to [her] from all other sources . . . to provide for her health, support and maintenance in order to maintain her, to the extent reasonably possible, in accordance with the standard of living to which [she] is accustomed at the time of [John's] death." Upon Rita's death, the Marital Deduction Trust terminates and the remaining trust assets, if any, are to be distributed to John's descendants.[4]

In 2005, Rita sold the office building/parking lot for $240,000.00. Gary Lane, the CPA for both the Marital Deduction Trust and the Family Trust, testified Rita deposited one-half the sales proceeds in her personal account and the other half was mistakenly

---

[3]The remaining one-half interests belonged to Rita as her community property.

[4]John's *Will* defines "descendant's" as his children (Kelly Duncan, Kathleen O'Shea, John O'Shea, III, and Brian O'Shea) and their descendants.

3

deposited in the Family Trust account rather than the Marital Deduction Trust account.[5]
Thereafter, Rita made a variety of distributions to her children.[6]

## FAMILY TRUST

The Family Trust was initially funded by a stock brokerage account worth $780,000 and one-half the value of a home in Maine worth $900,000.00—totaling $1,680,000.00.

Rita is also the primary beneficiary of the Family Trust during her lifetime. As trustee, Rita is authorized to distribute both income and principal of the Family Trust to herself as "necessary, when added to the funds reasonably available to [her] from all other sources . . . to provide for her health, support and maintenance in order to maintain her, to the extent reasonably possible, in accordance with the standard of living to which [she] is accustomed at the time of [John's] death." The provisions of the Trust also provided that trust income and principal could be distributed to John's descendants if similar conditions were met, however, "such distributions [to his descendants] shall not, in the judgment of [his] Trustee jeopardize [Rita's] financial security." The Family Trust terminates on Rita's death and the remaining trust property, if any, is to be distributed to John's descendants.

---

[5]Lane testified that, because the money was subsequently distributed to Rita, no income tax was paid at the Family Trust level. He further testified that the taxable event would have been the same if the proceeds had been correctly deposited in the Marital Deduction Trust and then distributed to Rita.

[6]She used $45,000.00 to purchase a truck for Kelly, loaned Kelly's husband $40,000.00 to fund his law practice, made cash gifts of $9,900.00 each to Kelly, Kathleen, and Brian, purchased a pony for Kelly's daughter Ali for $3,500.00, paid for her son John's two daughters to finish high school in Massachusetts, and opened a stock brokerage account for Ali equal to what she spent on education for her son John's daughters.

In 2005, the Trust had income of $12,963.29 of which $10,860.61 was distributed to Rita. In 2006, the Trust had income of $8,551.89 and distributed $42,385.49 to Rita. Rita also used approximately $30,000.00 to purchase a trailer for her daughter, Kathleen.

### RITA'S INCOME AND ASSETS

Rita's yearly income is derived primarily from the Family Trust's income, $7,000.00 annually, and her social security benefit, $1,800.00 per month or $21,600.00 annually. Although the Maine house generates $20,000.00 in rent annually, the Trusts' profits are substantially reduced by its taxes and upkeep expenses.[7] She also operates a tack shop in Lubbock which generates some, albeit not significant, income. Her expenses related to the Lubbock residence include utilities, upkeep, property taxes, and homeowner's insurance, of approximately $4,276.00 annually. Her Medicare supplemental insurance is approximately $3,000.00 annually. She also pays property taxes on the Fort Worth lot, $125.00, and the Hockley County property, $1,000.00. Her personal assets include a stock brokerage account worth $400,000.00, half the value of the Lubbock residence worth $100,000.00, half the value of the Hockley County tract worth $20,000.00, half the value of the Fort Worth lot worth $5,000.00, and half the value of the Maine home worth $900,000.00—totaling $1,425,000.00. She has four credit cards with debt totaling approximately $25,000.00.[8]

---

[7]Rita pays $7,000.00 in taxes annually on the Maine house. She testified that she lost money on the house one year.

[8]Rita has a credit card solely for expenses related to the Maine house with a balance of $4,000.00, an American Express card with a zero balance, a Capital One card with a $1,300.00 balance, and a Wells Fargo account for the tack store representing a running account to purchase stock for the store with a $20,000.00 balance.

**PROCEEDINGS BELOW**

In 2010, Kelly filed her *First Amended Original Petition* alleging actions against Rita for breach of fiduciary duty, fraud, and conversion, and against Kathleen for conversion. In addition to monetary damages, Kelly sought equitable relief in the form of a constructive trust on property transferred without adequate consideration. Kelly's claims against Kathleen were disposed of by an order granting a traditional motion for summary judgment. Kelly does not appeal that order.

On December 13, 2010, the trial court granted Rita's no-evidence motion for summary judgment on Kelly's action for conversion but denied the motion on Kelly's actions for breach of fiduciary duty and fraud. A bench trial was held and on February 15, 2011, the trial court signed its *Final Judgment* finding: (1) Kelly had standing to advance her claims for breach of fiduciary duty; (2) one-half of the proceeds from the sale of the law office building and parking lot were assets of the Marital Deduction Trust; (3) the purchase of the trailer for Kathleen was not authorized by the terms of the Family Trust; (4) distributions to or for the personal benefit of Rita from the Marital Deduction Trust principal or the Family Trust income or principal were properly allowable under the terms of the Trusts; (5) Rita's investment of Marital Deduction Trust assets in the business venture known as "Scopey" was permitted under the terms of the Trust; and (6) Rita's distributions to John's descendants (save and except the purchase of the trailer) were permitted under the terms of the Family Trust, but not permitted under the terms of the Marital Deduction Trust. The judgment further ordered Rita to individually reimburse the Family Trust for the $30,000.00 used to purchase the trailer for Kathleen and it imposed a constructive trust on the net proceeds from the sale of the office

6

building/parking lot that Rita received as Trustee of the Marital Deduction Trust, "to the extent" that John's descendants received distributions from those proceeds. This appeal followed.

**Discussion**

Kelly first asserts the trial court erred in its construction of the Trusts' terms by finding (1) distributions to or for the personal benefit of Rita from the Marital Deduction Trust principal or the Family Trust income or principal were properly allowable; (2) the Marital Deduction Trust's Scopey investment was permissible; and (3) Rita's distributions to her children from the Family Trust were permissible. Kelly also asserts the trial court erroneously granted summary judgment on her conversion claim because Rita wrongfully made distributions from the Family Trust to John's descendants. She next asserts the evidence is legally and factually sufficient to find that Rita breached her fiduciary duties and committed fraud because she made distributions in violation of the Trusts. Finally, Kelly contends the trial court erred by not removing Rita as Trustee for all Trusts.

**I. Construction of the Marital Deduction and Family Trusts**

The construction of a will or a trust instrument is a question of law for the trial court. *Hurley v. Moody Nat'l Bank of Galveston*, 98 S.W.3d 307, 310 (Tex.App.—Houston [1st Dist.] 2003, no pet.) (citing *Nowlin v. Frost Nat'l Bank,* 908 S.W.2d 283, 286 (Tex.App.—Houston [1st Dist.] 1995, no writ)). As such, the trial court's conclusion of law is subject to *de novo* review. *Keisling v. Landrum*, 218 S.W.3d 737, 741 (Tex.App.—Fort Worth 2007, pet. denied).

7

In interpreting a will or trust, we ascertain the intent of the testator or grantor. *See Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex.App.—Fort Worth 2003, pet. denied). We do so from the language used within the four corners of the instrument. *See Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980); *Eckels*, 111 S.W.3d at 694. If the language is unambiguous and expresses the grantor's intent, we need not construe the trust instrument because "it speaks for itself." *Hurley*, 98 S.W.3d at 310. We do not focus on what the grantor intended to write but the meaning of the words he actually used. *San Antonio Area Foundation v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000).

If, on the other hand, the meaning of the instrument is uncertain or "reasonably susceptible to more than one meaning," the instrument is ambiguous; *In re Ellison Grandchildren Trust*, 261 S.W.3d 111, 117 (Tex.App.—San Antonio 2008, pet. denied) (quoting *Eckels*, 111 S.W.3d at 694)), and evidence of the grantor's situation, the surrounding circumstances and like indicia which enable the court to place itself in the testator's shoes at the time the document was executed may be admissible. *Estate of Dillard*, 98 S.W.3d 386, 392 (Tex.App.—Amarillo 2003, no pet.) (citing *San Antonio Area Foundation*, 35 S.W.3d at 639)).

### A. Rita's Standard of Living

Kelly contends the trial court erred in determining that Rita has not spent for her own personal benefit more than was allowable under the terms of the Trusts because she was withdrawing more income and principal than was necessary to maintain her standard of living prior to John's death. She also asserts John's *Will* is ambiguous

because it fails to express any intent regarding what amount is necessary to maintain Rita's standard of living as it existed prior to his death.

As Trustee, Rita was and is authorized to make distributions to herself "as are necessary, when added to the funds reasonably available to [her] from all other sources . . . to provide for her health, support and maintenance in accordance with the standard of living to which [she] is accustomed at the time of [John's] death." Such a provision is unambiguous in its intent to maintain Rita in the standard of living to which she was accustomed at John's death. *Keisling*, 218 S.W.3d at 743.

While Kelly maintains Rita's standard of living prior to John's death was "frugal" and her current sources of income equal or exceed the $1,500.00 household budget she operated under during their marriage, this assertion overlooks Rita's testimony that, while they were married, John was generous with his gift-giving not only towards her but also his children. Furthermore, notwithstanding her income sources, Rita testified that, considering her expenses, she lives on less now than when she was married to John prior to his death.

Further, John's use of the words "support" and "maintenance" in the Trust instruments evinces the creation of "support trusts." *See State v. Rubion*, 158 Tex. 43, 308 S.W.2d 4, 8-10 (1957). In such trusts, the trustee is obligated to make his or her decision whether to authorize a distribution after considering the following indicia: (1) the size of the trust estate, (2) the beneficiary's age, life expectancy, and condition of life, (3) his or her present and future needs, (4) the other resources available or the beneficiary's individual wealth, and (5) his present and future health, both mental and

9

physical, to name a few.  *See Keisling,* 218 S.W.3d at 744; *Estate of Dillard,* 98 S.W.3d 386, 395 (Tex.App.—Amarillo 2003, pet. denied).  Thus, a distribution for Rita's health, support, and maintenance may be made from the Trusts only after a determination is made that the distribution meets the Trusts' requirements and "considering [Rita's] needs, age, condition, separate resources, the size of the Trusts, health and the like." *Id.*

The record here contains evidence of the size of the Trusts' estates[9] and the other resources available to Rita.[10]  Although the record contains some evidence of Rita's past and future expenses, there is no evidence concerning her age, life expectancy, condition of life, and health—mental or physical, that would have limited her ability to have made the distributions at issue in accordance with the terms of the Trusts.  Accordingly, based on the foregoing, we agree with the trial court that Rita has not spent for her own personal benefit more than what is allowed under the distribution standards applicable to the Trusts.

## B.  Scopey Investment

Kelly next asserts the trial court erred by finding that the Scopey investment was permissible under the terms of the Marital Deduction Trust.  Paragraph 10.1(e) of Article X of John's *Will* entitled *Fiduciary Provisions* expressly authorizes Rita, as Trustee, "[t]o invest and reinvest [John's] estate and each of the trust estates in any kind of property whatsoever, real or personal . . . whether or not productive of income."  *See also* Tex.

---

[9]The Marital Deduction Trust has assets of $200,000.00 and income of approximately $1,000.00 annually while the Family Trust has assets of $1,680,000.00 and income of approximately $7,000.00 annually.

[10]The value of Rita's personal assets total $1,425,000.00.

Prop. Code Ann. § 113.056 (West 2007). Testimony supports the conclusion that the expenditure was an investment and not a distribution. Accordingly, we agree with the trial court that Article X permits Rita's investment of Marital Deduction Trust funds in the Scopey business.

### C. Family Trust Distributions

Kelly next asserts the trial court erred by approving Rita's distributions to John's descendants under the Family Trust provisions because the distributions do not relate to their health, support, maintenance and education, and those distributions jeopardize Rita's financial security as evidenced by her credit card debt.

Rather than explain why the distributions to John's descendants do not relate to their health, support, maintenance, and education, Kelly simply concludes the distributions do not meet the requirements of the Family Trust. Texas Rule of Appellate Procedure 38.1(h) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). A failure to provide substantive analysis of an issue waives the complaint. *See Taylor v. Meador,* 326 S.W.3d 682, 684 (Tex.App.—El Paso 2010, no pet.); *Eastin v. Dial*, 288 S.W.3d 491, 502 (Tex.App.—San Antonio 2009, pet. denied). Accordingly, Kelly has waived this argument.

In addition, Kelly's assertion that the distributions jeopardize Rita's financial security is unsupported by the record. Notwithstanding the Trusts' assets available for future distribution, Rita has personal assets of well over a million dollars. Further, $20,000.00 of the $25,000.00 credit card debt represents a running account used to

11

purchase stock for her tack shop. Under these circumstances, we cannot say as a matter of law that the distributions violated the Family Trust's terms. Kelly's first issue is overruled.

## II. Summary Judgment

Kelly next asserts the trial court erroneously granted Rita's no-evidence motion for summary judgment on her conversion action. In support, Kelly asserts the trial court was precluded from granting summary judgment in Rita's favor because the record raised contested issues of material fact with regard to each element necessary to establish conversion. We disagree.

### A. Standard of Review

We review the trial court's summary judgment *de novo*. *Provident Life and Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is appropriate when there is no genuine issue as to any material fact and judgment should be granted in favor of the movant as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2003).

In reviewing a no-evidence summary judgment motion, we examine the record in the light most favorable to the nonmovant. *Forbes, Inc. v. Granada Biosciences, Inc.,* 124 S.W.3d 167, 172 (Tex. 2003). If the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, summary judgment is improper. Tex. R. Civ. P. 166a(i); *Forbes, Inc.*, 124 S.W.3d at 172 (citing *Wal-Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex. 2002)).

**B. Conversion**

"The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion." *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). The elements of a cause of action for conversion are: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; and (3) the defendant refused plaintiff's demand for return of the property. *Hunt v. Baldwin*, 68 S.W.3d 117, 131 (Tex.App.—Houston [14th Dist.] 2001, no pet.).

Kelly's action for conversion fails because there is no evidence Kelly had possession of, or was entitled to possession of the Trusts' assets. Rita is the Marital Deduction Trust's sole beneficiary and, by its terms, no distributions are to be made to anyone else during her lifetime. Under the Family Trust, she is "primary" beneficiary. As Trustee for the Trusts, she holds title to, and has the right to possession of, the Trusts' income and corpus. *See Beckhal v. Atwood,* 518 S.W.2d 593, 598 (Tex.Civ.App.—Amarillo 1975, no writ).

At best, John's *Will* gives his descendants, including Kelly, the *possibility* of a distribution from the Family Trust during Rita's lifetime or an inheritance from the Marital Deduction and Family Trusts' assets upon Rita's death. *See Davis v. Davis,* 734 S.W.2d 707, 709-10 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) ("The possibility of inheritance does not create a present interest or right of title in property.")

13

As such, John's descendants hold equitable title[11] to the Family Trust's corpus and *may* be entitled to a distribution if Rita exercises her discretion as Trustee in accordance with the Trust's terms.[12]  *Rekdahl v. Long*, 417 S.W.2d 387, 391 (Tex. 1967).  Further, both Trusts terminate upon Rita's death and John's descendants may inherit the Trusts' assets, if any remain.  Thus, John's descendants have a remainder interest in any property that *might* remain in either Trust upon Rita's death.  *See Black's Law Dictionary* 1317-18 (8th Ed. 2004) (A remainder interest is "[a] future interest arising in a third person . . . who is intended to take after the natural termination of the preceding estate.")  The terms of the Trusts make clear that John intended to provide for his wife *as the sole or primary beneficiary* during her lifetime and the entire corpus of both Trusts could be expended for Rita's benefit during her lifetime at her sole discretion as Trustee.  *See Eisen v. Capital One,* 232 S.W.3d 309, 313-14 (Tex.App.—Beaumont 2007, pet. denied).

We have examined the record and Kelly has failed to produce any evidence that she owns, has possession of, or is entitled to possession of any income or corpus belonging to either Trust.  Neither has she adduced any evidence that Rita assumed or exercised dominion and control over the Trusts' property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Kelly's rights.  Accordingly, because evidence of an element of conversion is completely lacking, the

---

[11]Equitable title "indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title." *Black's Law Dictionary* 1523 (8th Ed. 2004).

[12]The Family Trust provides that the Trustee "shall" make distributions to Rita.  *See Lesikar v. Lesikar Family Trust*, 237 S.W.3d 361, 367 (Tex.App.—Houston [14th Dist.] 2007, pet. denied) ("shall" as used in contracts is mandatory, operating to impose a duty; whereas "may" is discretionary, leaving such distributions to the reasonable discretion of the trustee.)

trial court properly granted summary judgment in Rita's favor on Kelly's cause of action for conversion.[13]  Kelly's second issue is overruled.

### III. Legal and Factual Sufficiency

By her third and fourth issues, Kelly contends the trial court's judgment was in error because her "evidence was legally and factually sufficient to prove each element required" for breach of fiduciary duty and fraud.  To the extent that Kelly's complaint is that the trial court failed to find breach of a fiduciary duty or fraud as a matter of law, we cannot say that the court did or did not make those findings.[14]  The *Final Judgment* does not expressly find so one way or the other and, despite the fact that Kelly requested findings of fact and conclusions of law, no such findings or conclusions were entered by the trial court.

To preserve a complaint for appellate review, a party must obtain either an express or implicit ruling from the trial court.  Tex. R. App. P. 33.1.  Because Kelly did not make a further request as required by Rule 297 of the Texas Rules of Civil Procedure, an adverse ruling cannot be implied.  *See Pharo v. Chambers County,* 922 S.W.2d 945, 948 (Tex. 1996) (finding that in the absence of findings of fact and conclusions of law, an appellate court must presume that the trial court made all the findings necessary to support its judgment).  Having failed to obtain an express or an

---

[13]That Kelly may be a "beneficiary" and have an "interest" in the Martial Trust under the Texas Trust Code; *see* Tex. Trust Code Ann. § 111.004(2), (6) (West Supp. 2011), may entitle her to bring a statutory action for an accounting; *id.* at § 113.151, or breach of trust.  *Id.* at § 114.001(a).  In fact, we note that the trial court's *Final Judgment* expressly finds that Kelly has standing to "advance her claims for breach of fiduciary duty."  Nowhere, however, does the Texas Trust Code permit a direct action for conversion based upon its statutory definition of the terms "beneficiary" or "interest."

[14]What Kelly really seems to be complaining about is that the trial court did not grant the relief she requested, to-wit: removal of the trustee, a matter more fully addressed in issue five.

implied adverse ruling, no error is preserved for review. Issues three and four are overruled.

### IV. Removal

Finally, Kelly asserts the trial court erred in failing to remove Rita as Trustee for all Trusts under the Texas Trust Code; Tex. Prop. Code Ann. § 113.082 (West 2007), because she materially violated the terms of the Trusts, resulting in a material financial loss to the Trusts and she is hostile against a beneficiary, to-wit: Kelly, so much so as to adversely affect her performance as Trustee for both Trusts.

Kelly's *First Amended Original Petition* did not seek a remedy of removal due to any statutory or common law breach of Rita's fiduciary duties.[15] Although Kelly testified at trial that she wanted the trial court to remove her mother as trustee,[16] she did not move to amend her *First Amended Original Petition* nor present any evidence regarding a suitable replacement trustee.[17] Rita's counsel, on the other hand, informed the trial court during cross-examination that Kelly did not plead the remedy and, in closing argument, opposed the trial court's consideration of the remedy, argued there had been no discovery regarding who could or would serve as a substitute trustee, and denied there had been any trial by consent. Kelly's counsel countered in closing that removal

---

[15]For Kelly's breach of fiduciary duty action, she sought unliquidated and exemplary damages. In addition, her *First Amended Original Petition* sought a constructive trust for all property and/or assets transferred without consideration, a temporary injunction, pre-judgment and post-judgment interest, attorney's fees, and costs.

[16]Kelly mentioned this remedy during her answer to the final question posed by her attorney on direct examination.

[17]The Texas Trust Code requires that, on the removal of a sole trustee such as Rita, a successor trustee must be appointed by the court in accordance with the terms of the trust instrument. Tex. Prop. Code Ann. § 113.083(a) (West 2007).

was an alternative remedy available to the trial court through Kelly's action for breach of fiduciary duty.

It is axiomatic that a trial court's judgment must conform to the pleadings, the nature of the case proved, and the verdict. Tex. R. Civ. P. 301. *See Stoner v. Thompson*, 578 S.W.2d 679, 682-83 (Tex. 1979) (absent trial by consent, trial court cannot grant relief without pleadings to support it); *Prize Energy Resources, L.P. v. Hoskins*, 345 S.W.3d 537, 567 (Tex.App.—San Antonio 2011, no pet.) (trial court may not grant relief on a theory of recovery not sufficiently stated in the party's live pleadings or tried by consent). Kelly did not seek to amend her petition to assert the remedy under a statutory action for removal or under her common law action of breach of fiduciary duty. Accordingly, she did not preserve the issue for appeal. *See* Tex. R. App. P. 33.1(a); *Offutt v. Southwestern Bell Internet Services, Inc.,* 130 S.W.3d 75, 78 (Tex.App.—San Antonio 2003, no pet.).

Further, trial by consent should only be used in exceptional cases; *Austin Area Teachers Federal Credit Union v. First City Bank—Northwest Hills, N.A.*, 825 S.W.2d 795, 800 (Tex.App.—Austin 1992, writ denied), where the evidence on the issue is developed under circumstances indicating that both parties understood the issue in the case, and the other party failed to make an appropriate complaint. *Emerson Electric Co. v. American Permanent Ware Co.*, 201 S.W.3d 301, 309 (Tex.App.—Dallas 2006, no pet.). Trial by consent is inapplicable here where evidence of the unpleaded matter (the remedy of removal) is relevant to the pleaded issues, i.e., Kelly's action for breach of fiduciary duty. *See Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (trial by consent inapplicable where evidence of pleaded action relevant to unpled action). *See also*

17

*Moore v. Alta Energy Technologies, Inc.,* 321 S.W.3d 727, 734 (Tex.App.—Houston 2010, pet. denied); *In the Interest of J.M. and L.M.,* 156 S.W.3d 696, 706 (Tex.App.—Dallas 2006, no pet.) (collected cases cited therein).  Accordingly, Kelly's fifth issue is overruled.

## Conclusion

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice